[No. 8373.]

## TRINIDAD NATIONAL BANK v. JAMIESON HOUSE FURNISHING COMPANY.

1. STATUTES—*Construction.* Statutes which permit the taking of private property upon constructive service of process should be subjected to strict scrutiny. (360.)

2. ATTACHMENTS—*Several—Statute Construed.* The plain purpose of sections 99, 100 of the Code is to enable several creditors of the same debtor to prorate in the proceeds of the debtor's property which is attached, and not to permit the establishment of the creditor's right in an unusual way. The service of the summons of the creditor first attaching does not avail one attaching subsequently. It is not to be assumed that notice of the demand of one creditor, by the publication of his summons, will afford notice to

the debtor of all causes of action which may subsequently be asserted against him upon his contractual obligations. (361.)

Judgment in favor of a creditor attaching subsequently to the first, without service of process in his action, upon the defendant, is a nullity. (362.)

3. —— *Attachment Must be Levied.* It is apparent from sections 102, 104 and 105 of the Code, that the legislature intended that where there are several attachments against the same defendant, the writ of each creditor shall not only be issued, but levied. (362.)

*Error to Las Animas District Court.* Hon. A. WATSON MC-HENDRIE, Judge.

Mr. A. C. MCCHESNEY, Mr. JOHN A. GORDON, for plaintiff in error.

Mr. H. A. SCHMIDT, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court.

On the 3rd of August, 1913, the Jamieson House Furnishing Company, defendant in error, brought an action for possession of certain land, in the District Court of Las Animas County, against plaintiff in error, the Trinidad National Bank.

The situation is shown by an agreed statement of facts, upon which the cause was submitted and decided by the trial court. The property involved is lots 8 and 9, block 15 of Terry's addition to the city of Trinidad. August 5th, 1910, Susie M. and Thomas B. Lochard instituted an action in attachment against the owner of the property, C. S. Innis, to recover the sum of $162.25. A writ of attachment issued therein and was levied on the property. Summons issued upon which return was made that defendant could not be found. Thereafter the plaintiff Thomas B. Lochard filed affidavit showing the defendant Innis to be a non-resident of the state, and an order was thereupon entered for service by publication. The summons was published as required by law, entitled "Susie M. Lochard and Thomas B. Lochard, vs. C. S. Innis, defendant," stating the amount of the demand as $162.25 and costs of suit.

On the 24th of August, 1910, the Trinidad National Bank filed its complaint, affidavit and undertaking in attachment against Innis, to recover the sum of $500.00 due upon a promissory note, and was, upon application, made a party plaintiff to the Lochard suit. On the following day the Lochards assigned their claim and cause of action to the bank upon its payment of their claim against Innis, and on the second day following, August 26th, the bank recorded a trust deed of the property, previously executed by Innis for its use and benefit to secure the payment of the $500 note.

The defendant in error, the Jamieson House Furnishing Company, filed its complaint, affidavit and undertaking in attachment against Innis, on the 3rd of September, 1910, to recover the sum of $285.68, and was also upon application made a party plaintiff to the Lochard suit.

The bank subsequently dismissed the Lochard suit, and in due course foreclosed the trust deed, and procured a deed of the property from the public trustee. Meanwhile the Jamieson Company recovered judgment against Innis, execution issued, the property was advertised and sold to satisfy the judgment, and in due course a sheriff's deed was executed and delivered to it. About a month after the recovery of this judgment the sheriff made return upon writ of attachment theretofore issued in the cause of *Lochard vs. Innis,* under an order of the court directing that the same be made *nunc pro tunc.*

It will be observed that Innis never at any time entered his appearance in any of the proceedings; that no summons was issued or served by publication or otherwise giving him notice of the claims and demands of either the bank or the Jamieson company; that the only service made, and the only writ of attachment issued or levied was in the original suit of *Lochard v. Innis.* In the court below the Jamieson company relied upon its sheriff's deed to eject the bank, who in

answer set up its deed from the public trustee. Judgment was rendered against the bank, which it brings here on error for review.

Sections 99 and 100 of the Code of Civil Procedure, R. S. 1908, respectively, read as follows:

"That no final judgment shall be rendered in a cause wherein an attachment writ has been issued and a levy made thereunder, until the expiration of thirty days after such levy has been made; and any creditor of the defendant making and filing an affidavit and undertaking, as hereinbefore required of the plaintiff, together with his complaint setting forth his claim or demand constituting his cause of action against the defendant, shall, upon application to the court wherein such action is brought, be made a party plaintiff in such action, and may have like remedies against the defendant to secure his claim or demand, as the law gives to the original plaintiff."

"After any creditor has been made a party to the action, as hereinbefore provided, a dismissal by the first or any subsequent attaching creditor of his cause of action, or proceedings in attachment, shall not operate as a dismissal of the attachment proceedings, as to any other attaching creditor; but that the remaining creditors may proceed to final judgment therein the same as though no such dismissal had been made."

It is provided by section 99 that within thirty days after the levy of an attachment writ any creditor of the defendant, upon filing affidavit, undertaking and complaint, shall upon application be made a party plaintiff to the proceeding "and may have like remedies against the defendant to secure his claim or demand as the law gives to the original plaintiff." What is meant by "like remedies?" Is a subsequent intervening creditor required to proceed in all particulars to acquire jurisdiction as did the original plaintiff, or is the service by publication and levy of the writ by the

original plaintiff sufficient for a judgment in favor of such intervening creditor? It is clear that if the Jamieson company had proceeded as did the original plaintiff, by levying its writ and publishing notice in due course, it would in all respects have been placed upon an equal footing with the latter for the purpose of pro-rating in the proceeds of the attached property.

The plain purpose of the statute was to permit creditors to pro-rate the proceeds of attached property, not to permit them to establish rights in a strange and unusual way. The provision simply makes it possible for all creditors to put themselves in a position of equality, in respect to the satisfaction, out of the property attached, of claims properly asserted and regularly adjudicated; and it is a matter of administrative policy and convenience that all creditors intervening are, upon application, named as plaintiffs in one general proceeding for the purpose of determining and adjudicating their respective rights. Prior to its adoption the first in time secured a preferential right over the claims of all other creditors. Speed was made paramount, and the first attaching creditor gained an exclusive, and oftentimes an unfair advantage over others. Section 99 appeared in the amendment of 1894, and was designed, as its express terms indicate, to eliminate the possible occurence of such inequality under the law. This was the unquestionable purpose of the enactment of the new section, and therefore if it was intended to therein provide a means whereby any and all intervening creditors are permitted to prosecute their claims to judgment, under publication of notice and levy of a writ by the original attaching creditor, that should appear in plain terms, and not by resort to doubtful construction. The constitutional provision concerning due process demands that all laws which permit the taking of property upon constructive notice shall be subjected to strict scrutiny by the courts, and the intent to accomplish that end

must be made apparent by clear and express terms, which is by no means the case with the statute under consideration.

Remedy is the means employed to enforce a right or redress an injury.  2 Bouvier's Law Dictionary, p. 870; 7 Words & Phrases, p. 6073.  The "like remedies" secured to an intervening attachment creditor by section 99 are no more or less than such means as were available to the original plaintiff to establish and secure his claim, that is to say, upon the filing of affidavit, undertaking and complaint, with application to be made a party plaintiff in the original proceeding, the intervening creditor merely places his claim, in point of time of action, and for the purpose of pro-ration, upon an equal basis with that of the original plaintiff, and should enforce his rights by the same legal modes as were available to the one first to act.  It certainly was not intended thereby to put an intervening creditor in a better position than he who first attached, and the statute grants no privilege which obviates taking the steps ordinarily requiste to jurisdiction in order to recover a valid judgment upon a claim properly established.  The claim of the Jamieson company was a separate cause of action.  To hold that "like remedies" comprehends that the attachment debtor has constructive notice, by the original proceeding, of any and all causes of action which might be subsequently asserted against him upon his contractual obligations, would be to declare that which is plainly not within the purview of the section, much less within its express terms.

Section 102, Code, R. S. 1908, provides that whenever it shall appear that "levies of writs of attachment have been made upon the property of the defendant" sufficient to render him insolvent, it shall, upon application, be ordered that "writs of attachment" may issue in suits upon contracts not yet due, in order that such attaching creditors may pro-rate in the proceeds of the attached property.  Section 104 reads thus in part:  "In every case where an affidavit shall be

made and filed, as aforesaid, it shall be lawful for the clerk to issue a writ of attachment." Section 105 also provides certain conditions under which "actions may be commenced and writs of attachment issued." These expression in the act indicate that the legislature intended that a writ should be not only issued, but levied by the original plaintiff, and as well by each intervening creditor who sets up a new and independent cause of action. The issuance of a writ, without levy thereof, would be useless.

The judgment rendered in favor of the Jamieson company was void, and no rights were acquired by it under the sheriff's deed. The court below erred in adjudging it the owner and entitled to the possession of the property as against the bank, and therefore, the judgment is reversed and the cause remanded with directions to enter judgment in favor of the plaintiff in error.

Judgment reversed and cause remanded with directions.

GABBERT, C. J., and WHITE, J., concur.