No. 23285.

CONSOLIDATED FINANCE CORPORATION *v.* M. E. THORP, EMMA B. THORP, AND MARCUS GALLEGOS.

(450 P.2d 320)

Decided February 17, 1969.

PETRIE, KING, WOODROW & ROUSHAR, VICTOR T. ROU-SHAR, for plaintiff in error.

FAIRLAMB & FAIRLAMB, TRAYLOR, KLADDER, HARSHMAN & PALO, DAVID PALO, for defendants in error M. E. Thorp and Emma B. Thorp.

NICHOLAS E. DARROW, for defendant in error Marcus Gallegos.

*In Department.*

Opinion by MR. JUSTICE MOORE.*

---

*Retired Supreme Court Justice sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

THE plaintiff in error will be referred to as Consolidated. Defendants in error M. E. and Emma Thorp were intervenors in the trial court and will be referred to as the Thorps. Marcus Gallegos was also an intervenor in the trial court and will be mentioned by name. The defendants named in the complaint filed by Consolidated were William H. Ayers and Romula T. Ayers doing business as O. K. Auction Company. They are not parties to the action in this court since William did not appear in the trial court and Romula was dismissed as a defendant. Hartford Fire Insurance Company was an interpleader and is not designated as a party in this court. It will be referred to as Hartford.

In the complaint filed by Consolidated on April 29, 1966, judgment in the sum of $15,000 was sought against William and Romula Ayers. A writ of attachment was issued and served upon M. E. Thorp and it was duly recorded against Lots 18 and 19, Block 4, Businessmen's Addition to the city of Delta. Emma Thorp entered a general appearance by joining her husband in the petition for intervention. Title to these lots stood in the name of the Thorps but the lots were under contract of sale to the Ayers. The purpose of the attachment was to reach the equity of Ayers in real estate located in Delta, which stood in the name of Thorps or one of them, and was being purchased by Mr. and Mrs. Ayers. Summons was served upon the named defendants, the Ayers, by publication and mailing.

A pertinent portion of the contract of purchase entered into between Ayers and Thorps related to the subject of default in payments and forfeiture thereof. It reads as follows:

"It is further stipulated and agreed by and between the parties hereto that the time of making each and every one of said payments punctually shall be of the essence of this agreement, and in the event said second parties shall fail, neglect or refuse to make any payment when due, with thirty days grace period being allowed, then

and in such event first party may at his option and election declare this agreement to be null and void, and into the possession of said premises re-enter, as in their former estate, and may retain any and all payments made hereon as liquidated damages for the failure, neglect or refusal of second parties to fully comply herewith."

Admittedly, Thorps did not take possession of the property or any part thereof until after the first writ of attachment had been issued and served upon them. Admittedly, they did nothing, either before or after any of the attachment proceedings, to comply with the provision of the contract to the effect that at the expiration of a "grace" period Thorps " * * * may at his option and election declare this agreement to be null and void * * *."

Upon being served with the writ of attachment Thorps filed their motion to intervene, to which was appended a copy of their contract with Ayers. By this contract Consolidated was informed of the fact that other property was also involved, and accordingly an alias writ of attachment issued under which Lots 14 to 17, Block 4, were included in the attachment proceedings. Thorps filed a written statement concerning the contractual relations between them and Ayers, from which it appears that as of December 31, 1965, Ayers had reduced the balance due under the contract from the original sum of $12,200 to $8,811 leaving an equity of $3,389 which Consolidated sought to attach to apply on payment of any judgment finally entered in its favor. This statement was filed on June 10, 1966. On May 26, 1966, Consolidated tendered into the registry of the court the sum of $8,983.34 being the full amount due and owing from Ayers to Thorps under the terms of the contract of purchase between them.

On November 22, 1966, pursuant to a stipulation entered into between Consolidated and Romula T. Ayers, she was dismissed as a party defendant. In the stipulation she disclaimed any interest in either the funds on

deposit in the court registry or the lots covered by the contract of purchase. The stipulation contained a statement that any possible interest which she might have had was assigned to Consolidated.

Default judgment was entered against William H. Ayers, and final judgment in the sum of $15,000 plus interest entered on May 8, 1967, in favor of Consolidated.

On August 12, 1965, prior to the commencement of this action, a building located on property included in the attachment proceedings and the chattels located therein were partially destroyed by fire. The building and contents were covered by an insurance policy issued by Hartford. On May 26, 1966, no settlement on the policy having been made, Consolidated caused an alias writ of attachment to issue and garnishee summons was served upon the insurance company. Thereupon Hartford interpleaded and tendered unto court the sum of $5,000 to cover its liability under the insurance policy. The policy was issued to the Thorps in 1963 as the owners of the property. When they entered into the contract with Ayers for the sale of the property covered by the policy, a Uniform Standard Contract of Sale Clause was signed by the insurance company and the coverage was extended to William Ayers.

In its "Cross-Complaint in Interpleader" Hartford analyzed the claims being made against it as follows:

"6. Defendant M. E. Thorp claims said sum by reason of the allegation that defendants William H. Ayers and Romula T. Ayers defaulted in payments upon the above mentioned contracts giving M. E. Thorp right to immediate possession.

"7. Defendants William H. Ayers and Romula T. Ayers claim said sum by reason of the fact that they were in possession of the premises upon the date when the said fire occurred and they allege that all payments required to be made and promises to be performed by them under the said contracts were current and well kept.

"8. Defendant Consolidated Finance Corporation claims

the said sum by reason of its mortgage interest in certain personal property damaged or destroyed by the said fire, and by reason of a certain writ of attachment obtained by it and against defendants William H. Ayers and Romula T. Ayers in aid of which Consolidated Finance Corporation has caused writ of garnishment to be served upon plaintiff.

"9. Plaintiff is ready and willing to pay the sum of $5,000.00 to such person as may prove a right to receive the same, and it has paid the said sum of $5,000.00 into the registry of this Honorable Court."

Gallegos, a contractor, appeared on the scene on May 12, 1967, on which date he filed a certified copy of a lien statement executed by him on May 11, 1966, in which he asserted a lien for labor and work performed on March 19, 1966. On May 19, 1967, he filed his complaint in intervention and both Thorps and Consolidated filed answers to that complaint.

The trial court entered findings of fact and conclusions of law consisting of eight typewritten pages. Pertinent findings made by the trial court, in substance, are as follows: That the amount due on the purchase price under the contract between Ayers and Thorps was $8,811; that the original contract price was $12,200; that there was due under the chattel mortgage signed by Ayers and held by Consolidated the sum of $1,422.83 which became delinquent in April, 1966; and that $8,983.34 was tendered by Consolidated into the registry of the court for the benefit of Thorps, being the full amount remaining unpaid on the purchase contract.

The trial court further found that the writs of attachment levied on the real estate involved did not purport to cover any interest of the Thorps. The court found, "That, under the contract, M. E. Thorp and Emma B. Thorp were entitled to take repossession of the premises as of approximately March 31, 1966"; that they did take possession "about the last part of April or the first of May, 1966;" that Ayers "did, in fact,

150

abandon the property;" and that Ayers had no interest in the property which was subject to attachment by Consolidated.

With reference to the claim of Gallegos, the trial court found that after the fire of August 12 ,1965, " * * * without the consent of M. E. Thorp, Defendant William H. Ayers did have the building rebuilt under the direction of Intervenor Marcus Gallegos"; that work of reconstruction began in September or October 1965 and ended "the latter part of December, 1965"; that costs involved in the repair were paid by Ayers except as to $4,559.31 remaining unpaid and due Gallegos; that Gallegos filed a mechanic's lien but failed to foreclose thereon within the statutory time and thereby forfeited his lien; "that Gallegos could, and does, have a right of action against William H. Ayers for money due under contract, and that this right of action would extend to the Thorps inasmuch as any improvements made upon the property would inure to the benefit of the Thorps."

The trial court entered judgment dissolving the attachments and directing that the money deposited in the court registry by Consolidated be returned. The court awarded judgment in favor of Gallegos and against Thorps for the sum of $4,559.31 and the clerk of the court was directed to pay this sum to Gallegos from the insurance money on deposit. The total claim of Consolidated to the fire insurance money was denied, even though it held a chattel mortgage on property destroyed in the fire on which there was an unpaid balance of $1,422.83.

QUESTIONS TO BE DETERMINED

First. *Did the Ayers own an equity in the real estate described in their contract with Thorps which was subject to attachment by Consolidated on April 29, 1966?*

■ This question is answered in the affirmative. The trial court erred in holding to the contrary. Prior to the attachment of the property nothing had been done by Thorps to terminate the contract, or to claim a forfeiture

of the equity of $3,389 which had been paid on the total purchase price of $12,200. From and after the 29th day of April, 1966, Consolidated was subrogated to all the rights of Ayers in the contract. He was entitled to notice that the seller "at his option" had elected to "declare this agreement null and void" and to "retain any and all payments made hereon as liquidated damages * * *."

Assuming arguendo that any such election had been made, there would still be presented the question of whether a foreclosure might not be required through which a period of redemption would be available to Ayers or any other person subrogated to their rights or occupying the position of lien holder under a recorded judgment against Ayers. Consolidated acquired a lien by attachment and before this cause was decided by the trial court it had obtained and recorded a judgment against William Ayers and an assignment of all the interest of Romula T. Ayers.

In this posture of the case, when Consolidated tendered all moneys due and payable from Ayers to Thorps under the terms of their contract, Consolidated very effectively satisfied every lawful claim which Thorps relied upon in their intervention. At that point Thorps no longer had any standing as a party to the proceeding having a right to be heard. "The thing which a grantor is interested in is the purchase price. If, in due course, he gets that price, he ought not to complain." *Fairview Mining Corporation v. American Mines and Smelting Co.*, 86 Colo. 77, 278 P. 800. Numerous authorities might be cited in support of the proposition that where, under a contract of sale, a purchaser has performed to the extent that he has a substantial interest in the property, a court of equity will not require him to sacrifice such interest without reasonable opportunity to protect it through redemption such as is afforded in mortgage foreclosure proceedings. In this connection it is sufficient to direct attention to *Cavos v. Geihsler*, 109 Colo. 163, 123 P.2d 822.

Second. *As between Gallegos and Consolidated, what are the rights to payment from the $5,000 deposited by Hartford covering the loss by fire?*

■ It must be borne in mind that no personal service justifying a judgment in personam was ever had upon William Ayers by any party to this action. Gallegos secured no service of any kind upon him. The court acquired jurisdiction over the insurance fund solely as a result of the garnishment of Hartford in attachment proceedings instituted by Consolidated. We are also mindful of the fact that Gallegos did not pursue to conclusion his right to foreclosure of the real estate upon his mechanic's lien. The court expressly found that, "Gallegos failed to commence suit within the statutory period of time and Gallegos lost any rights he may have had under said lien; * * *." In the absence of service of any process whatever upon Ayers by Gallegos concerning the claim which he asserted in his petition in intervention, no judgment in personam can be entered in favor of Gallegos against Ayers; nor can he be awarded any part of the insurance proceeds unless in some manner he is entitled to participate in the funds held in the attachment proceedings duly commenced by Consolidated.

We know of no authority which would justify this court in holding that Gallegos can recover his loss from the insurance funds under the circumstances shown by the record. There is authority to the contrary. In *Trinidad National Bank v. Jamieson House Furnishing Company,* 60 Colo. 356, 153 P. 441, in answering the argument that an intervening creditor need not comply with the same rules applicable to the first attaching creditor, this court said, *inter alia*:

" * * * It was certainly not intended thereby [referring to Code Sections 99 and 100 of the Code of Civil Procedure, R.S. 1908, which permits creditors to intervene within 30 days in an attachment proceeding, as Thorps did in this case] to put an intervening creditor in a

better position than he who first attached, and the statute grants no privilege which obviates taking the steps ordinarily requisite to jurisdiction in order to recover a valid judgment upon a claim properly established. * * *."

The policy of insurance named Thorps and Ayers as beneficiaries "as their interests appear." Thorps were eliminated as parties with any valid interest following the tender of Consolidated to pay all sums due on the sales contract. The only persons insured with an interest protected under the insurance policy were Ayers. Of course Consolidated would be subrogated to the rights of Thorps. Thus the attachment and garnishment by Consolidated of the insurance money successfully reached and impounded the interest of Ayers and those funds should be applied to satisfaction of its judgment.

The judgment is reversed and the cause remanded with directions to sustain the attachment of Consolidated and the garnishment in aid thereof and to proceed to sale of the real property attached, with the proceeds derived therefrom to be applied on the judgment entered in favor of Consolidated. Moneys deposited by Consolidated for the benefit of Thorps shall be paid to them, together with any earnings thereon accruing during the pendency of this action.

MR. CHIEF JUSTICE McWILLIAMS, MR. JUSTICE DAY and MR. JUSTICE LEE concur.