HERSEY, Judge.
Boca-Med Associates, Limited, a Florida limited partnership, appeals a final judgment entered in favor of appellees for the principal and interest past due on a loan purportedly made to appellant by appellees. The issue on appeal is whether a loan was made to appellant.
Boca-Med owns and operates a medical building in Boca Raton, Florida. H.L. Nic-kell served as a general and limited partner of Boca-Med from its inception in January 1976 until June 1980.
In January of 1978 Martin Hackman was engaged to manage the medical building. Hackman observed that Boca-Med was in serious financial trouble, and in February received a letter from the mortgagee, Boca Raton Federal, that “three payments had to be made immediately or the property was going to be foreclosed.” Nickell, it was later discovered, had converted approximately $70,000-$100,000 of partnership assets to his own use.
Marshall Sigel, one of the limited partners, made a demand on Nickell to restore the funds he had misappropriated. On February 24, 1978, Nickell contacted Bernard Glassman, a principal of Melrose Development Co., and told him that he needed money to pay the interest on the loan from Boca Federal for Boca-Med. Glassman testified that Nickell sounded frantic on the telephone and Glassman agreed to lend the money, making a check payable to Boca Federal “because I wanted to be sure that the money went to paying that loan.” Glassman was not aware that Nickell owed money to the partnership. A promissory note given by Nickell to Glassman makes no mention of Boca-Med. The note, in the amount of $28,838.90, included $5,000 which Glassman testified had previously been loaned to Nickell personally. Nickell later executed a check for this latter amount to Glassman, which was returned for insufficient funds. Glassman testified that he knew Nickell and Pappas “were just building Boca-Med and that they were general partners and I believe both had ownership,” but that he knew nothing else about the financial condition of the partnership.
Dr. Richard J. Venezia succeeded Nickell as general partner of Boca-Med. He and the limited partners brought suit against *648 Nickell and Pappas, which was settled as to Nickell in the following manner: Nickell gave the partnership approximately $10,-000 cash, returned his interest in the partnership, and was given credit for the time he spent as manager of the building. Part of the settlement was the $23,000 check obtained from Glassman, which Nickell later represented to the partners that he had borrowed personally.
The settlement occurred at the time the instant suit by Glassman was pending against Nickell and Boea-Med, et al. Vene-zia testified that when the instant suit was filed he asked Nickell about the nature of the loan, and that Nickell stated “don’t worry about it; I borrowed that money personally; I signed the note personally.” Venezia testified that the loan from Glass-man was an “eleventh-hour move” by Nic-kell, and that the other partners were willing to lose the investment, having a smaller interest in Boca-Med than Venezia. Vene-zia and Marshall Sigel, another limited partner, were both aware of Nickell’s intention to borrow from Glassman in order to avoid foreclosure; however, there is no evidence that the other partners were aware of this fact.
The trial court found that the loan made by Glassman, payable to Boca Federal Savings, was “on behalf of the partnership, not on behalf of Mr. Nickell. I think the equities are not with the partnership because the partnership was aware at the time of settling with Mr. Nickell that this suit was in existence and they should have brought Mr. Glassman in and they precluded him by entering into their settlement without notification of him that they were doing so.” The court ordered the partnership to pay Glassman $23,838.90 together with interest of $6,641.52.
We reverse the final judgment as not supported by substantial competent evidence.
Reduced to its essence the evidence is:
(1) A check from Melrose Development Company to Boca Federal in the principal amount of the loan;
(2) A promissory note evidencing the indebtedness executed by Nickell, not the partnership; and
(3) Testimony of Glassman containing statements which are somewhat ambiguous; however, in response to a question from his own attorney: “Was that loan intended to be at least from your standpoint a loan to Nickell?”, Glassman answered: “It would have been a loan to Nickell for the purpose of paying his interest .... ”
This evidence is insufficient to support the conclusion that a loan was made to the partnership.
The trial court’s statement concerning the equities of the case refers, apparently, to a theory of estoppel or unjust enrichment. Neither pertains here. The settlement between Nickell and the partnership had no legal effect on the status, nature or collectibility of the indebtedness. The partnership had no duty, legal or moral, to join the creditor in either the litigation or the settlement negotiations. Thus, no basis for estoppel arose. Nor was there “unjust” enrichment. Nickell owed the partnership money. Nickell borrowed from Melrose in order to pay a debt of the partnership for which he ultimately received credit from the partnership against his indebtedness to it. The partnership did nothing “unjust” vis-a-vis Glassman/Mel-rose.
There being no evidentiary support for the various legal and equitable theories applied by the trial court below, the final judgment cannot be sustained.
We reverse and remand for entry of judgment for appellant.
REVERSED and REMANDED.
DOWNEY and WALDEN, JJ„ concur.