**ALASKA SALES AND SERVICE, INC., Appellant,**

v.

**Richard MILLET, d/b/a Superior Body Work, Appellee.**

**No. S–1359.**

Supreme Court of Alaska.

April 17, 1987.

John C. Siemers, Burr, Pease & Kurtz, Anchorage, for appellant.

Jacob H. Allmaras, Jacob H. Allmaras, P.C., Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This case involves a claim of unjust enrichment arising out of repairs to a truck-tractor (the truck). The sole issue presented is whether the equitable doctrine of unjust enrichment permits a repairman not compensated for work performed on a vehicle to recover from the holder of a security interest in that vehicle when the latter has foreclosed upon its interest and also received insurance proceeds as a result of the damage which gave rise to the repairs. The trial court held that the repairman could recover, granting partial summary judgment on the issue of liability in favor of the repairman, Richard Millet, d/b/a Superior Body Shop (Millet). The secured creditor, Alaska Sales & Service, Inc. (AS & S), appeals from this decision. We reverse. AS & S received nothing more than that which it was entitled to receive under contract with a common debtor. Consequently, it was not unjustly enriched.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are undisputed.[1] AS & S originally owned the truck subject to a valid, perfected security interest held by General Motors Acceptance Corporation (GMAC). In May 1975, AS & S sold the truck to Bayless & Roberts, Inc. (Bayless), a common carrier, under a lease/purchase agreement. Title to the truck listed AS & S as lessor, Bayless as lessee and GMAC as lienholder. The truck was insured, along with the rest of the "Bayless fleet," by Morben Insurance Market Corporation (Morben) through a local broker Clary Insurance Agency (Clary).

In early October 1976, the truck was badly damaged in an accident. Bayless made a claim for repair under its insurance policy with Morben. Morben hired Northern Adjusters, Inc. (Northern) to solicit bids for the truck's repair. The adjuster contacted Millet for an estimate. Millet estimated a total repair cost of $19,957.48. The insurance adjuster approved this esti-

---

1. The parties submitted cross-motions for summary judgment to the trial court under a "Statement of Stipulated Facts," with exhibits. Additional facts come from Millet's deposition.

mate and, after approval from Bayless,[2] undertook the repairs. The repair cost was $19,957.48 as per the estimate. No dispute exists as to the quality of the repairs and the parties agree that Millet's efforts did enhance the value of the truck.

Millet contacted Northern and Clary about compensation for the repairs but no payment was ever received. In April 1977, Millet prepared an invoice listing Bayless as the "customer/debtor." The invoice was delivered to Bayless with courtesy copies sent to Northern, Clary and AS & S.

In June 1977, Millet filed a statutory nonpossessory improvement lien. Later that same year, AS & S requested possession of the vehicle.[3] Millet, upon advice of counsel, voluntarily relinquished control of the truck to AS & S. In December 1977, no action having been brought, Millet's lien lapsed. In 1980, Millet sued Northern and Clary to recover the truck's repair costs. That lawsuit was later dismissed, with prejudice, by agreement of the parties.

The truck was one of a number of Bayless vehicles involved in accidents during the fall of 1976, resulting in $104,569.89 in insurance claims against Morben. Morben tendered only partial payment on these claims, giving rise to a dispute over coverage and amount of compensable damages. In April 1977, Morben filed a declaratory action in federal district court to resolve this dispute.[4] Eventually, this case was settled by agreement whereby Morben agreed to pay $80,000 in full satisfaction of the insurance claims. Since Bayless was in bankruptcy at the time,[5] the settlement was submitted to, and approved by, the bankruptcy court.

Under this settlement agreement, Bayless agreed to transfer the insurance proceeds to GMAC, which in turn disbursed the funds to AS & S. Of the $80,000 received, AS & S (per GMAC's instructions)

used $24,000 to pay off the outstanding balances owed by Bayless under several lease/purchase agreements, including the $12,160.32 Bayless still owed on the truck. The remaining $56,000 was applied to Bayless' $446,164 debt to AS & S for parts and services.

Later, after spending $7,213.32 to repair the truck's engine, AS & S sold it to a third party for $18,900.

On June 11, 1981, Millet filed this suit against GMAC. By agreement, GMAC was dismissed with prejudice and AS & S substituted as the defendant. The parties stipulated to the facts and submitted the issue of liability to Judge Milton M. Souter on cross-motions for summary judgment. Judge Souter granted Millet's motion holding that "[Millet] is entitled to recover from [AS & S] pursuant to the doctrine of unjust enrichment." Shortly thereafter, AS & S moved for reconsideration which the court denied. After the parties stipulated to damages, the court entered a final judgment. This appeal followed.

## II. STANDARD OF REVIEW

When reviewing a grant of summary judgment, we "must determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts." *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). In the case at bar, the parties stipulated to the facts and submitted only a question of law to the trial court. We review questions of law under a *de novo* (or "independent judgment") standard of review. *Armco Steel v. Isaacson Structural Steel*, 611 P.2d 507, 516 n. 22 (Alaska 1980).

## III. DISCUSSION

In this case we confront one specific aspect of equitable jurisprudence—the doc-

---

2. Bayless, as owner of the truck, was the only party who could actually authorize the repairs. Millet and Bayless reached an oral agreement for the repairs sometime in the fall of 1976.

3. AS & S held a valid security interest in the truck which was perfected prior to the date Millet commenced repairs.

4. Neither Millet nor AS & S was a party to this suit.

5. Bayless is no longer in business and is now insolvent.

trine of "unjust enrichment." The trial court invoked this concept to hold that Millet was entitled to recover from AS & S because of its receipt and retention of both the insurance proceeds arising from the accident which precipitated Millet's repairs to the truck *and* the proceeds from the sale of the repaired truck. AS & S asserts that this decision is erroneous for two reasons. First, that the doctrine of "unjust enrichment" is inapplicable here and, second, that even if the doctrine is applicable, it was not "unjustly enriched." Because our resolution of the latter question resolves this case, we do not reach the former.

■ Unjust enrichment is a broad equitable concept that underlies various legal theories and remedies. It is most closely linked with the law of restitution and implied (quasi) contracts. *See generally* 66 Am.Jur.2d *Restitution and Implied Contracts* § 3 (1973). As a general rule:

> A person who has been unjustly enriched at the expense of another is required to make restitution to that person. A person is enriched if he receives a benefit; a person is unjustly enriched if the retention of the benefit without paying for it would be unjust.

*Bevins v. Peoples Bank & Trust*, 671 P.2d 875, 881 (Alaska 1983) (citation omitted). Implicit in this statement of the rule is our recognition that unjust enrichment is not in and of itself a theory of recovery. Rather, it is a prerequisite for the enforcement of the doctrine of restitution; that is, if there is no unjust enrichment, there is no basis for restitution. Restitution, in turn, is not a "cause of action" but rather a remedy for various causes of actions. Millet's complaint avers a "contract ... implied in law" as his "cause of action" in this case. Thus, by holding that Millet was entitled to recover from AS & S "pursuant to the doctrine of unjust enrichment" the trial court, in effect, decided that Millet was entitled to restitution under a quasi-contract theory.

While there may be little substantive significance [6] to this distinction it is helpful for purity of analysis.

■ Quasi-contracts are not true contracts but are judicially created obligations to do justice. *See generally* 1 A. Corbin, *Corbin on Contracts* §§ 18–19, at 39–50 (1963); 1 S. Williston, *Williston on Contracts* §§ 3–3A, at 8–13 (3d ed. 1957). Consequently, the obligation to make restitution that arises in quasi-contract is not based upon any agreement between the parties, objective or subjective. *Nordin Construction v. City of Nome*, 489 P.2d 455, 464 n. 9 (Alaska 1971). Recovery is based "on the equitable maxim that one person should not be unjustly enriched to the detriment of another." *Id. See also* 66 Am.Jur.2d, *supra*, § 2 (in quasi-contracts the obligation arises "from the law of natural immutable justice and equity").

■ Courts have generally recognized three essential elements of quasi-contract:
> 1) a benefit conferred upon the defendant by the plaintiff;
>
> 2) appreciation by the defendant of such benefit; and
>
> 3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof.

*See, e.g., Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 155 (1966). The courts are in accord in stressing that the most significant requirement for recovery in quasi-contract is that the enrichment to the defendant must be unjust; that is, the defendant must receive a true windfall or "something for nothing." *E.g., Barrett v. Ferrell*, 550 S.W.2d 138, 143 (Tex.App. 1977). Where a defendant has given fair consideration or value to a third party in exchange for the benefits conferred by the plaintiff, there is no windfall and no recovery will lie.

**6.** Courts generally treat actions brought upon theories of unjust enrichment, quasi-contract, contracts implied in law and *quantum meruit* as essentially the same. *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154 (1966). In fact, this "terminology" is generally employed interchangeably, often within the same opinion. *See, e.g., Nordin Constr. v. City of Nome*, 489 P.2d 455, 464–65 (Alaska 1971) (referring to unjust enrichment and *quantum meruit* interchangeably).

In the instant case, the first two elements of quasi-contract are undoubtedly satisfied. Millet clearly conferred a substantial benefit on AS & S by making over $19,000 in repairs on the truck AS & S repossessed and eventually resold. AS & S effectively concedes that it "appreciated" the benefit: it stipulated that Millet's repair work "enhanced the value of the [truck]." Thus, the only real question presented for resolution here is whether retention of both the insurance proceeds and the proceeds from the sale of the truck enriched AS & S and, if so, whether that enrichment was unjust.

AS & S contends it has not been enriched, let alone unjustly enriched. According to AS & S, it has received nothing more than those benefits and rights it was entitled to receive by contract with Bayless. AS & S emphasizes that it gave value and consideration for both. Under these circumstances, AS & S asserts, there is no enrichment and certainly no enrichment that is unjust.

■ AS & S argument is persuasive. It is axiomatic that a party cannot be enriched at the expense of another for receipt of that to which the party is legally entitled. Here, AS & S was legally entitled to recover the truck pursuant to their security agreement. They were also legally entitled to payment for the parts and service provided to Bayless on open account. Having received nothing more than payment on legitimate secured and unsecured debts, AS & S was not enriched at Millet's expense. Not having been enriched, AS & S could not have been unjustly enriched.

In effect, Millet's case comes down to the proposition that because Bayless paid AS & S rather than him, he should be allowed to recover from AS & S. We cannot agree. Substantial authority exists for the proposition that there is no unjust enrichment where one creditor receives payment from a common debtor while another creditor is left unpaid. *See Peoples State Bank v. Marlette Coach Co.*, 336 F.2d 3 (10th Cir. 1964); *Consolidated Finance v. Thorpe*, 168 Colo. 144, 450 P.2d 320 (1969); *Boca-Med Associates v. Glassman*, 464 So.2d 646 (Fla.App.1985); *Indianapolis Raceway Park v. Curtiss*, 386 N.E.2d 724 (1979); *Oregon Mutual Insurance v. Cornelison*, 214 Or. 501, 330 P.2d 161 (1958). Implicit in these cases is the recognition that courts will not use principles of equity to reallocate risks of payment. Millet, having contracted with Bayless, assumed the risk that Bayless would not pay for the services rendered. Equity will not indemnify him for his business judgment.

## VI. CONCLUSION

While sitting in its equitable capacity, this court may avail itself of "powers broad, flexible and capable of being expanded to deal with novel cases and conditions." *Southern Pacific v. Robinson*, 132 Cal. 408, 64 P. 572, 573 (1901). There are many circumstances, however, where an individual may confer benefits upon another for which equity will give no remedy. This case presents one such circumstance. Consequently, the trial court's judgment is REVERSED and the case REMANDED with instructions to enter summary judgment on the issue of liability in favor of AS & S.