**Spiro GEORGE, Appellant,**

**v.**

**Gary CUSTER, Appellee.**

**No. S–4640.**

Supreme Court of Alaska.

Nov. 12, 1993.

Robert L. Breckberg, Boyko and Flansberg, Anchorage, for appellant.

Tonja Woelber, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

*OPINION*

RABINOWITZ, Justice.

This appeal concerns a dispute over the existence of an oral contract between Spiro George ("George") and Gary Custer ("Custer") for an option to purchase a meat-packing plant, house, and acreage in Palmer. The superior court awarded judgment for Custer in the amount of $59,052 on his counterclaim and for George in the amount of $11,500 on his complaint. George appeals asserting thirty-four separate specifications of error.

## FACTS

George bought a meat-packing plant located in the Matanuska Valley in 1974. George operated the plant independently for two years and then began leasing the property to other parties. The original rental property included the plant facility, a house and approximately forty acres of land.

George first rented the property to the McGees for $3,000 a month for a period of three to four years. After the McGees' departure, the Heatons began renting from George in 1981. Monthly rent was initially $1,500, with what appears to be incremental increases every six months until the monthly rent was again $3,000. The Heatons were new to the slaughterhouse business so they hired Custer, an experienced butcher. Custer and his family stayed in the house located on the property as part of the financial arrangement they made with the Heatons. Custer occupied the house for seven years, 1982 through 1988.

In 1983 a new slaughterhouse, Mount McKinley Meat & Sausage, Inc., opened in the Matanuska Valley. The Heatons decided to leave the meat-packing business in early 1984, citing various reasons, the primary one being competition from the new meat-packing business. Custer went to work for Mount McKinley Meat & Sausage as a foreman earning $2,000–$2,500 per month. Custer and his family continued residing in the house on George's land, paying George $400 per month rent.

In 1984 George approached Custer and encouraged him to go into business for himself. George offered Custer free rent for one year in return for reopening the plant as a custom-exempt house,[1] and $1,500 per month for the second year. The rent on the house continued to be $400 a month. The parties agreed that a substantial investment of both time and money was needed to make the plant operational.

After a nonjury trial the superior court found that the parties discussed and understood that Custer was to have an option to buy the plant, house, and eight acres of the land upon which they were located. At the time of the agreement, the parties had not discussed a time frame for exercising the option, a definite purchase price, or terms for payments and security. Custer made improvements on the plant, expending time, labor, and $8,600 in equipment to make the plant operational and to meet the requirements for certification as a custom-exempt house. During this initial three-month period George indicated to Custer that he would sell him the facility for $150,-000.

Custer eventually decided that it would be worth his while to bring the plant up to federal standards so that he could sell meat to third parties. George encouraged him in his efforts, suggesting that Custer raise pigs and that he would buy the pigs if Custer proceeded with the operation. Custer undertook construction of permanent improvements and bought the equipment necessary to bring the plant up to federal standards. The renovations took place over a period of two years. The superior court further found that Custer expended approximately $42,000 on improvements (minus $2,627.80 properly allocated to maintenance), $35,000 on equipment, and $19,680 in labor, for a total investment of $94,052 in the property.

The superior court found that in June 1987, George informed Custer that the rent was being raised to $2,500 per month. Custer responded that he could not afford

**1.** Custom operations for personal, household, guest, and employee uses are exempt from federal carcass inspection requirements. 21 U.S.C. § 623 (1988).

the contemplated rent increase and that he would have to either leave or purchase the premises. George indicated that he would sell the plant to Custer for $300,000 (a 100% increase from his 1984 offer when the real estate market was higher). Custer did not question the 100% increase in price, did not attempt to negotiate the price with George, and did not make any effort to obtain the money to purchase the property. Custer continued to lease the property.

The superior court determined that Custer was not liable to George for equipment removal costs or alleged property damage because George did not prove any such losses by a preponderance of the evidence. Based on Custer's admission that he currently owes back rent in the amount of $11,500, the superior court concluded that Custer owed George $11,500 in rent.

On the basis of the above findings the superior court concluded that Custer's claims for damages sounded in contract, and that George had breached the implied covenant of good faith and fair dealing inherent in the option to purchase contract. The court held George liable for all consequential damages resulting from his breach which included $39,372 in building improvements and $19,680 for labor to bring the plant up to federally inspected status, for a total of $59,052.[2]

## STANDARD OF REVIEW

 The case was tried by the court without a jury and is subject to the "clearly erroneous" standard. Alaska Civil Rule 52(a) provides in part:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.[3]

To reverse a finding of fact on appeal we must have a "definite and firm conviction that a mistake has been made." *Donny-*

brook Bldg. Supply, Inc. v. Interior City Branch, First Nat'l Bank of Anchorage, 798 P.2d 1263, 1266 (Alaska 1990). We generally review questions of law *de novo*. *Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

## I. THE PARTIES DID NOT ENTER INTO A CONTRACT GIVING CUSTER AN OPTION TO PURCHASE THE PLANT, HOUSE, AND ACREAGE.

 The superior court found that the parties had entered into two separate agreements. First, Custer and George entered into an oral agreement in which Custer would lease the plant rent-free for one year in return for repairs, and would thereafter pay a monthly rental of $1,500. Second, the superior court found that the parties discussed and reached an agreement that the lease would include an option to purchase the plant, house, and the land upon which they were located.

The first agreement is not in dispute. It is uncontested that George and Custer agreed to a one-year lease of the plant for no rent in exchange for repairs with subsequent rent payments of $1,500 per month after the first year. Rather, George contests the superior court's determination of the existence of a second agreement. George argues that his conversations with Custer concerning the sale of the property were inconclusive and thus precluded a holding that an option contract existed.

In its formal findings of fact the superior court found that

> [t]he parties also discussed and understood that defendant was to have an option to buy the plant and house and eight acres of the land on which they were located. When the agreement was made, no time frame for exercising the option, no purchase price, and no terms had been discussed.

---

**2.** The superior court found Custer had proven damages in a total amount of $59,052 (expenditures plus labor), minus $11,500 in back rent owed by Custer to George, for a net recovery by Custer of $47,552 in damages, plus interest and attorney's fees.

**3.** It is for the trier of fact to determine whether an oral contract exists and the contract's terms where the evidence conflicts. *Curran v. Hastreiter*, 579 P.2d 524, 526 (Alaska 1978); *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1282 n. 1 (Alaska 1985); *B.B. & S. Constr. Co., Inc. v. Stone*, 535 P.2d 271, 273 (Alaska 1975).

In its conclusions of law the superior court determined that

> Defendant proved the existence of a contract to lease with option to purchase sufficient to give rise to damages for breach of the implied covenant of good faith and fair dealing. It is clear that Custer agreed to take over the plant, and relinquish his good paying job at the Mt. McKinley facility, only because the parties intended that Custer would eventually buy the plant. It is also evident that within two-three months after the lease arrangement started, and well before any of the improvements at issue here had been undertaken, George set a purchase price of $150,000.[4]

These findings of fact and conclusions of law stand in stark contrast to the superior court's assessment of the contract-option issue at trial. During final arguments the superior court commented:

> The fact remains that nobody has been able to articulate what the terms of this agreement were, beyond the fact that at some point after the initial lease arrangement was entered into, a figure of $150,000.00 was thrown out. It's not enough for me to feel it was a real contract, we don't have a term—we don't have terms—we don't have a term as to the time, we don't have terms of payment. We don't have anything that really would stand up as an agreement.
>
> So, you're back to, it seems to me, it was a very stupid thing, frankly. And, the question is is that enough to support unjust enrichment.... But I don't see how you can argue there was a real agreement.

Subsequently, the superior court stated:

> If you're talking about a transaction in the range of $150,000.00, wouldn't terms of purchase—I mean some broad outline be.pretty essential? You know, what's the interest rate going to be on this, what kind of financing, what kind of down payment?
>
> ....
>
> ... There was some kind of understanding but I don't see how it could it rise in the eyes of the law to a contract. Yeah, they were getting into this thing with an eye towards possible purchase down the road, that's as far as any contract goes, and I don't see how it amounts to a contract.

Study of the record convinces us that the superior court correctly analyzed the contract-option issue during trial, but then erred in its subsequent formulation of findings of fact and conclusions of law that the parties had entered into an enforceable option to purchase contract. In *Stenehjem v. Kyn Jin Cho*, 631 P.2d 482, 485 (Alaska 1981), we said:

> A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract; they must have expressed their intentions in a manner that is capable of understanding. It is not even enough that they have actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.

(Quoting 1 Arthur L. Corbin, *Corbin on Contracts* § 95, at 394 (1963 & Supp.1992) (footnote omitted)).

Application of the above principles to the record in this case leaves us with the definite and firm conviction that the superior court's controlling findings concerning the

---

**4.** Citing *City of Kenai v. Ferguson*, 732 P.2d 184 (Alaska 1987), the superior court further noted in its conclusions of law:

> The law in Alaska, as well as in other jurisdictions and as favored by the commentators, increasingly allows the enforcement of contracts under certain circumstances when the parties intend to be bound, notwithstanding the fact that critical terms such as rent or price are left unspecified. The courts reason that to fail to do so would work an inequity on the party who has relied upon the agreement in good faith.
>
> (Citations omitted).

existence of an oral option contract between the parties are clearly erroneous. After analyzing the record, we conclude that the superior court's finding that the parties "discussed and understood that defendant was to have an option to buy the plant and have eight acres of land on which they were located" is clearly erroneous. We therefore reverse the superior court's legal conclusion that the parties had orally agreed to an option contract. Simply put, the component of certainty is absent here since none of the essential terms of this purported option contract were proven by a preponderance of the evidence.[5]

## II. *RESTITUTION*

■ As to the question of whether Custer has any restitutionary remedies the superior court found in dictum that Custer would be entitled to restitution, even in the absence of a binding contract. The superior court said:

In *Alaska Sales and Service v. Millet,* 735 P.2d 743 (Alaska 1987), the court held that restitution could be ordered as a remedy for unjust enrichment in an action based on quasi-contract....

In this case, the evidence established numerous improvements to the plant and equipment used in operating the plant which placed the plant in better operating condition as a custom-exempt facility, and which also brought the plant considerably closer to obtaining approval on a federally inspected basis. Defendant further proved that George was enthusiastic about the improvements, even suggesting, as noted previously, the concept of raising pigs which required the construction of pens and laying of water lines, etc. George wanted the plant to achieve federal inspection status. Defendant obviously "appreciated" the benefit bestowed on his property by plaintiff. Finally, George encouraged Custer to proceed with the improvements, all the while aware of the magnitude of expense

and labor being invested by Custer, and also aware that Custer understood that he would be purchasing the property.

In its conclusion of law regarding restitutionary damages the superior court wrote:

Were damages to be awarded on a restitutionary rather than a contractual basis, defendant would have to establish the value to plaintiff's property of the labor and improvements bestowed upon plaintiff by defendant.... The amounts incurred by defendant do not provide an adequate basis for ascertaining the extent to which plaintiff has been enriched.

(Citation omitted).

Concerning the subject of unjust enrichment, in *Darling v. Standard Alaska Production Co.,* 818 P.2d 677, 679–80 (Alaska 1991), we stated:

Unjust enrichment does not depend on any actual contract, or any "agreement between the parties, objective or subjective." *Alaska Sales and Serv., Inc. v. Millet,* 735 P.2d 743, 746 (Alaska 1987). In *Alaska Sales,* we noted that "unjust enrichment is not in and of itself a theory of recovery. Rather, it is a prerequisite for the enforcement of restitution; that is, if there is no unjust enrichment, there is no basis for restitution." *Id. Alaska Sales* identified three elements of a claim sounding in quasi-contract for unjust enrichment:

1) a benefit conferred upon the defendant by the plaintiff;

2) appreciation by the defendant of such benefit; and

3) acceptance and retention of the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof.[6]

"In determining the measure of damages in a claim of unjust enrichment the court focuses upon the amount of benefit which the defendant received which would be unjust-

5. This holding makes it unnecessary to address George's statute of frauds defense.

6. *See also Bevins v. Peoples Bank & Trust Co.,* 671 P.2d 875 (Alaska 1983); *Altman v. Alaska*

*Truss & Mfg. Co.,* 677 P.2d 1215, 1226 (Alaska 1983); *Parliment v. Yukon Flats Sch. Dist.,* 760 P.2d 513, 518 (Alaska 1988).

ly retained, and does not necessarily focus on the value of money, labor, and materials provided by the plaintiff to the defendant." *Fairbanks North Star Borough v. Tundra Tours,* 719 P.2d 1020, 1029 n. 15 (Alaska 1986).

Here the parties are in agreement that if we determine that the superior court erred in its finding of an oral option contract, then the case should be remanded for further proceedings to ascertain what restitutionary damages, if any, should be awarded to Custer. We are not bound by the parties' functional equivalent of a stipulation for remand. Nevertheless, given the superior court's alternative holding that Custer is entitled to restitution we think it a just resolution that the case be remanded to the superior court for determination of what restitutionary damages, if any, Custer is entitled to recover.

REVERSED and REMANDED for further proceedings consistent with this opinion.