*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SHEILA LYNN ERWIN, | ) | |
| | ) | Supreme Court Nos. S-16487/16517 |
| Appellant and | ) | |
| Cross-Appellee, | ) | Superior Court No. 3AN-10-09931 CI |
| | ) | |
| v. | ) | |
| | ) | O P I N I O N |
| WILLIAM H. MENDENHALL, | ) | |
| | ) | |
| Appellee and | ) | No. 7309 – October 19, 2018 |
| Cross-Appellant. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Robert C. Erwin, Robert C. Erwin LLC, Anchorage, for Appellant and Cross-Appellee. Douglas C. Perkins, Hartig Rhodes LLC, Anchorage, for Appellee and Cross-Appellant.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

CARNEY, Justice.

## I.    INTRODUCTION

The superior court awarded one of the husband's investment accounts to the wife in a divorce. Before transferring the account to the wife, the husband transferred shares of three mutual funds from that account to a separate investment account. The wife asked the court to order him to account for the missing shares. The court ultimately

ordered the husband to pay the wife the value of the shares on the date of the transfer and he did so.  The parties contested the value of the income earned by the improperly transferred shares.  Following lengthy litigation of this issue the court awarded the wife enhanced attorney's fees.

The wife appeals the valuation of the earned income of the shares.  The husband cross-appeals the valuation of the earned income on the shares and the award of attorney's fees.  We find that the superior court appropriately awarded the wife prejudgment interest instead of damages as well as enhanced attorney's fees.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Sheila Erwin and William Mendenhall married in Anchorage in June 1994. Erwin moved out of the marital home in February 2005 and filed for divorce in August 2010.  Trial was held in December 2012.

In its June 2013 findings of fact and conclusions of law the superior court found that a 50/50 split of property would be equitable.  The court awarded Erwin the entirety of a UnionBanc retirement account in Mendenhall's name (Account) with any gains or losses before distribution.  The Account consisted of shares of seven mutual funds.  On February 11, 2014 Mendenhall transferred the shares for three of the mutual funds from the Account to one of his other accounts.  At the time of this transfer the value of these shares was $164,757.43.  On February 13, 2014 the superior court issued a final judgment and decree of divorce.

In April 2014 Mendenhall prepared a letter of authorization asking UnionBanc to liquidate the assets in the Account and to transfer the value to Erwin.  He instructed UnionBanc not to allow Erwin access to any information about the Account.

Erwin sent a copy of the divorce order to UnionBanc to effectuate the transfer; UnionBanc transferred the balance of the Account to her without liquidating the shares. Erwin received shares of four mutual funds.

B.     Proceedings

In May 2014 Erwin filed a motion asking the court to order Mendenhall to account for the missing mutual fund shares. On September 23 the court ordered Mendenhall to provide an accounting for the missing shares within ten days. On September 30 Mendenhall's attorney asked for an extension from Erwin's attorney until October 31, although he apparently never formally filed for an extension from the court, nor did the court grant one. On October 31 Mendenhall emailed Erwin's attorney stating that he had not had time to look for any alleged missing funds but that he would transfer "the share amount" to Erwin if she gave him an account number.

In December 2014 Erwin filed a notice to the court that Mendenhall had failed to comply with the court's order to account for the missing investments. Mendenhall responded that he had mistakenly transferred the shares to his children's college account but was willing to transfer the shares to Erwin. Erwin argued that Mendenhall's offer was unsatisfactory because he had never provided an accounting of the shares and did not guarantee that the transfer would protect the tax-deferred status of the funds.

In February 2015 Mendenhall's attorney suggested a settlement: Mendenhall would pay Erwin $158,000 if Erwin would withdraw her May 2014 motion. Mendenhall offered to transfer the money to Erwin's UnionBanc account. Erwin did not accept this offer.

In June 2015 Erwin filed a motion to enforce the final judgment and decree of divorce. She asked the court to award her the value of the shares of the three mutual funds at the time of transfer plus any earnings and distributions on the shares since the

transfer. Mendenhall filed a partial opposition, claiming that he had attempted to transfer Erwin the shares but that she had not provided him with her account number.

The court held a hearing on these motions in December 2015. It ordered Mendenhall to determine the value of the three mutual funds on the date of the transfer and to transfer that amount to Erwin. The court held that Erwin was "entitled to any earnings that she would have been entitled to on those mutual funds" and instructed the parties to file briefs calculating the value of those earnings and providing a clear methodology for their calculations and authority for adopting the methodology. Mendenhall transferred Erwin $164,757.43 in cash, which she received on January 5, 2016. In an order clarifying scheduling, the court stated that it was satisfied with the $164,757.43 value at the time of the transfer and considered the issue resolved.

Erwin then filed a brief on the lost investment earnings from the mutual fund shares. She proposed calculating the earnings by multiplying total distributions per share by the number of shares in the account at the time of the transfer. She based the total distributions per share on information from websites of the mutual funds and from Morningstar.[1] Erwin calculated that Mendenhall had received a total of $41,920.88 in investment earnings on these three funds over the relevant time period.

Mendenhall disputed Erwin's calculations and argued that the mutual fund shares had actually lost value during this time period. He argued that, because the funds had lost value, Erwin should reimburse him $17,616.61. Mendenhall argued that the value of the shares of each of the mutual funds at the date of transfer should be multiplied by the change in value during the relevant time period to adjust the value of

---

[1]     Morningstar is a company that provides investment information to individual investors. *About Us*, MORNINGSTAR, www.morningstar.com/company/about-us (last visited July 29, 2018).

the shares. Erwin filed a reply, arguing for the first time that Mendenhall tortiously converted the shares of the mutual funds.

The superior court held oral argument in July 2016. Erwin and Mendenhall presented the same proposed methodologies and values that they had argued in their briefs. The court found that neither proposed method of calculating the earnings was reliable because they were not based on any authority. It awarded Erwin prejudgment interest on the principal from the date of the transfer (February 11, 2014) until the date Erwin received the money (January 5, 2016) as a substitute.[2] It accepted Erwin's calculation of the interest and ordered Mendenhall to pay Erwin $11,730.47 in prejudgment interest.

Erwin moved for reconsideration, arguing that she was entitled to the earnings under the judgment of divorce, that prejudgment interest was not an adequate substitute for the shares that would have been purchased with the earned income on the shares, and that the court had not indicated that it wanted expert testimony or an evidentiary hearing. Because the court did not rule on the motion within 30 days it was deemed denied.[3] Erwin appeals.

In September 2016 Erwin moved for actual and full attorney's fees and costs: $41,956.87 in attorney's fees and $812.70 in costs. She argued that she should be awarded full fees and costs because Mendenhall had acted in bad faith, and because attorney's fees were required to make her whole. Mendenhall opposed, arguing that Erwin's fees were avoidable and had not been reasonably incurred. Erwin later filed a supplemental statement of fees and costs, requesting an additional $3,786.35 in attorney's fees and $1,195.00 in costs.

---

[2]   *See* AS 09.30.070.

[3]   *See* Alaska R. Civ. P. 77(k)(4).

In December 2016 the court issued an order that it was considering awarding Erwin full or enhanced attorney's fees, but only those fees relating specifically to the UnionBanc account. The court ordered Erwin to resubmit a cost and fee affidavit that included only those costs and fees. Erwin filed a supplement to her motion for actual and full attorney's fees, stating that the total fees that directly related to the UnionBanc account was $41,017.93. She also filed for supplemental costs of $1,750.00.

The court applied Alaska Civil Rule 82 to award attorney's fees. It found that Erwin was the prevailing party and entitled to fees pursuant to Rule 82(b)(1). It further found that Mendenhall had acted in bad faith and been vexatious and enhanced the fee award under Rule 82(b)(3)(G). The court awarded Erwin $35,000 in fees, inclusive of costs.

Mendenhall challenges the valuation of the earned income on the shares and the attorney's fee award in his cross-appeal.

## III.   STANDARD OF REVIEW

We "review de novo whether the trial court correctly applied legal rules pertaining to damages and prejudgment interest."[4]   "A trial court's determination of damages is a finding of fact which we affirm unless it is clearly erroneous."[5]

"Awards of attorney's fees are reviewed for an abuse of discretion."[6]   "An award of attorney's fees 'will not be disturbed on appeal unless it is "arbitrary, capricious, or manifestly unreasonable." ' "[7]

---

[4]   *City of Seward v. Afognak Logging*, 31 P.3d 780, 783 (Alaska 2001).

[5]   *Beaux v. Jacob*, 30 P.3d 90, 97 (Alaska 2001).

[6]   *Hopper v. Hopper*, 171 P.3d 124, 129 (Alaska 2007).

[7]   *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014) (quoting *Ferguson*
(continued...)

IV. **DISCUSSION**

A. **Earnings On The Mutual Funds**

Both Mendenhall and Erwin appeal the court's award of prejudgment interest in lieu of the value of the earned income on the shares of the mutual funds. Mendenhall argues that the court should have considered the decrease in value of the shares between the initial improper transfer and the transfer to Erwin and should order Erwin to reimburse him for the decreased value. Erwin argues that the court inappropriately rejected her methodology for calculating the income on the shares of the mutual funds and substituted prejudgment interest. We disagree with both arguments and affirm the court's decision.

1. **The court appropriately applied the principles of compensatory damages to effectuate the property division.**

Erwin argues that the court should have applied the principles of compensatory damages in tort to calculate her award.[8] She claims, as she did in her brief to the superior court, that Mendenhall should pay her the amount of earnings she calculates he received before he transferred the three mutual funds to her. Mendenhall objects to the application of the principles of compensatory damages for conversion, arguing that Erwin never argued that Mendenhall converted the mutual funds. Mendenhall argues that Erwin was only entitled to the value of the funds on January 5, 2016, the date she received the transfer.

---

[7]    (...continued)
*v. Ferguson*, 195 P.3d 127, 130 (Alaska 2008)).

[8]    *See Beaux*, 30 P.3d at 97 ("The general principle underlying the assessment of compensatory damages in tort cases is that 'an injured person is entitled to be replaced as nearly as possible in the position he [or she] would have occupied had it not been for the defendant's tort.' " (alteration in original) (quoting *Beaulieu v. Elliot*, 434 P.2d 665, 670-71 (Alaska 1967))).

While Erwin never filed a conversion action, the superior court did find that Mendenhall took property that had been awarded to Erwin and prevented her from using that property for nearly two years. To effectuate the property division the superior court apparently applied the principles of compensatory damages from conversion actions — it awarded Erwin the value at the time of the improper transfer plus interest.[9] Under these circumstances it was appropriate for the superior court to apply the principles of compensatory damages.[10]

### 2. Erwin did not present adequate evidence of the shares' earnings, and the court appropriately awarded prejudgment interest as a substitute.

Erwin argues that the superior court erred by not awarding her compensation for lost profits on the shares of the mutual funds. But the court found that Erwin had not met her burden of demonstrating the value of the income the mutual fund shares had earned. Such an award would likely have been available since "[l]oss of profits damages have been awarded in a variety of civil contexts, including tort actions (both personal and business), breach of contract actions, antitrust suits, and suits for

---

[9] *See Rollins v. Leibold*, 512 P.2d 937, 944 (Alaska 1973) ("Damages in an action of conversion generally are measured by the value of the item at the time it was converted plus interest.").

[10] *See Farmer v. Farmer*, 259 P.3d 256, 262 (Wash. 2011) (en banc) (approving use of tort law conversion measure of damages to grant wife equitable relief); *In re Marriage of Langham & Kolde*, 106 P.3d 212, 215-16 (Wash. 2005) (en banc) (analogizing to tort conversion for family law issue was proper). Mendenhall argues that Erwin was unjustly enriched by receiving the value of the shares on the date that Mendenhall transferred the shares to his other account. Unjust enrichment is not a freestanding claim and is a prerequisite for restitution. *Alaska Sales & Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987). The court found that Mendenhall took these shares in violation of a court order; he has no claim for restitution.

infringement of a patent or trademark."[11] But we require that loss of profits damages "be 'reasonably certain': the trier of fact must be able to determine the amount of lost profits from evidence on the record and reasonable inferences therefrom, not from mere speculation and wishful thinking."[12] For example, to recover lost profits in a breach of contract action "[t]he party seeking damages must provide a reasonable basis for computing the award."[13] Erwin did not do so.

The superior court explicitly instructed the parties to provide authority to support their method of calculating the income earned by the shares.[14] Erwin provided only general distribution statements for the three mutual funds and a memorandum explaining her approach. The distribution statements and explanation that Erwin provided do not appear to provide a reasonably certain basis for computing the loss of profits: The distributions include long-term capital gains, short-term capital gains, and ordinary income. No explanation was provided of the meaning of the different terms or

---

[11] *State v. Hammer*, 550 P.2d 820, 824 (Alaska 1976).

[12] *Id.* at 824-25.

[13] *Power Constructors, Inc. v. Taylor & Hintze*, 960 P.2d 20, 41 (Alaska 1998); *see City of Seward v. Afognak Logging*, 31 P.3d 780, 787 (Alaska 2001) ("The plaintiff bears the burden of proving damages, but once the existence of damage has been established, the amount of loss need not be proved with mathematical precision."); *Hammer*, 550 P.2d at 827 (holding that in eminent domain cases "the condemnee has the burden of proving by a preponderance of the evidence the amount of profits lost as a direct result of the state's taking; such proof must meet the requirement of reasonable certainty as indicated").

[14] *Cf. Oberhansly v. Oberhansly*, 798 P.2d 883, 888 (Alaska 1990) ("[T]he proper course would have been for the court to . . . order the parties to present points and authorities or introduce expert testimony to support their positions about the tax effects of distributing the retirement account.").

what was actually paid out to shareholders. The court did not err by finding that Erwin did not provide a reasonable basis to compute the actual value of earned income.

Erwin also argues that the superior court denied her claim without an explanation. But the court explained its decision: The parties presented wildly different accounts of the shares' earnings over the relevant period, neither party provided an expert to explain the proper methodology, and the court did not find either party's method reliable.

Erwin also argues that the superior court should have notified the parties that it required expert testimony or an evidentiary hearing if it was unsatisfied with the methodologies they presented. But it is the responsibility of the parties to prove their case and to request an evidentiary hearing; Erwin waived her right to an evidentiary hearing by not requesting one before the court ruled.[15]

In light of this evidentiary vacuum, it was appropriate for the superior court to award Erwin prejudgment interest. Prejudgment interest is meant to "compensate the successful claimant for losing the use of the money between the date he or she was entitled to it and the date of judgment."[16] Erwin argues that interest is not a substitute for loss of profits or loss of use, but we have recognized that "[i]n no event should both

---

[15]     *See Corbin v. Corbin*, 68 P.3d 1269, 1274 (Alaska 2003) ("Both parties were represented by counsel and nothing indicates that they were misled in any respect concerning how the court would proceed. Therefore [appellant] waived his right to an evidentiary hearing on disputed material questions of fact by his failure to request one before the court ruled."); *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1036 (Alaska 2002).

[16]     *Bevins v. Peoples Bank & Tr. Co.*, 671 P.2d 875, 881 (Alaska 1983); *see also Davis v. Chism,* 513 P.2d 475, 481 (Alaska 1973) ("[P]re-judgment interest is necessary to compensate the plaintiff, not only for the amount by which he has suffered damages in the usual sense but also for the loss of use of the money to which he has been entitled.").

interest and damages for loss of use be allowed, since loss of use damages generally are considered to be in lieu of interest, and to grant both would allow a double recovery."[17] The superior court appropriately applied prejudgment interest to compensate Erwin for her loss of use of the shares.[18]

### 3. Erwin's argument about the motion for reconsideration has no merit.

Erwin argues that it was error for the superior court not to rule on her motion for reconsideration. We disagree. Alaska Civil Rule 77(k)(4) specifically provides that if the court does not rule on a motion to reconsider, it is "taken as denied." Erwin's argument has no merit.

Even assuming that Erwin intended to argue that the superior court abused its discretion by denying her motion for reconsideration, we find no abuse of discretion. "[A]buse of discretion exists when a party has been deprived of a substantial right or seriously prejudiced by the lower court's ruling."[19] Erwin argued that the court overlooked the following: that Mendenhall did not follow the court's direction to submit

---

[17]    *Rollins v. Leibold*, 512 P.2d 937, 946 (Alaska 1973).

[18]    Erwin further argues that allowing Mendenhall to keep the dividends that the shares earned while wrongfully in his possession would unjustly enrich him. But "unjust enrichment is not in and of itself a theory of recovery." *Alaska Sales & Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987). Unjust enrichment "is a prerequisite for the enforcement of the doctrine of restitution" because "if there is no unjust enrichment, there is no basis for restitution." *Id.* "Restitution, an equitable remedy based on the concept of quasi-contract, is only available when there is no adequate remedy at law." *Haines v. Comfort Keepers, Inc.*, 393 P.3d 422, 428 (Alaska 2017) (footnote omitted). As we have noted, Erwin appears to argue that Mendenhall converted her property although she did not file a conversion claim. Even if she had, conversion has adequate remedies at law, and unjust enrichment is not generally available. *See id.*

[19]    *Wagner v. Wagner*, 299 P.3d 170, 173 (Alaska 2013).

an earnings calculation, that an award of interest to her did not adequately effectuate the property division, that interest is not a substitute for earnings, that Mendenhall continued to violate the property division, and that the parties had not been informed by the court that they should present expert testimony.  In light of the whole record, these arguments do not show that the court's denial was "so unreasonable or so prejudicial as to amount to an abuse of discretion" in denying her motion for reconsideration.[20]

### B.    Attorney's Fees

Alaska Civil Rule 82 governs the award of attorney's fees in civil cases. "Rule 82 applies to post-judgment modification and enforcement matters in domestic relations disputes" and "fees are appropriately awarded under the prevailing-party standard of Rule 82 as to post-judgment money and property disputes."[21]  The superior court appropriately applied Rule 82 and calculated attorney's fees.   Mendenhall challenges the superior court's award.

This court reviews underlying fact findings in an attorney's fee award for clear error.[22]  A factual finding is clearly erroneous if "our review of the record leaves us with the definite and firm conviction that the superior court has made a mistake."[23] The court found that Mendenhall affirmatively tried to conceal his attempts to violate the property division by failing to disclose the transfer and failing to answer Erwin's requests for information.  The record demonstrates that Mendenhall never provided an accounting of the missing shares despite the court's September 2014 order to do so.  The

---

[20]      *Id.* at 175.

[21]      *Johnson v. Johnson*, 239 P.3d 393, 399-400 (Alaska 2010).

[22]      *See id.* at 399.

[23]      *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 508 (Alaska 2015) (quoting *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006)).

court also found that Mendenhall's statements to the court that he had inadvertently transferred the funds to his children's college funds and that he had been unable to transfer the funds without Erwin's account number were disingenuous. The record supports this finding: Mendenhall transferred the funds to a different personal account between the date that the court issued its conclusions of law and the date of its final judgment; the letter of authorization he provided to UnionBanc instructed UnionBanc to sell the assets before transferring them to Erwin and to provide Erwin no information about the account.[24]

Under Rule 82(b)(3) the superior court can vary an attorney's fee award based on a number of factors, one of which is "vexatious or bad faith conduct." The court found that Mendenhall's conduct was both vexatious and in bad faith and warranted an enhanced fee award. The court's findings about Mendenhall's behavior were not clearly erroneous, and it was not an abuse of discretion to enhance fees based on his conduct.[25]

---

[24] Mendenhall argues that his offers to pay Erwin the amount of the transferred shares demonstrate that his litigation conduct was not vexatious or in bad faith. But regardless of any statements of his willingness to transfer the funds, Mendenhall never provided an accounting of the missing funds and did not initiate a transfer of the funds until December 2015. In light of the record as a whole, Mendenhall's statements that he was willing to transfer the funds do not demonstrate that the court's findings about Mendenhall's conduct were clearly erroneous.

[25] Mendenhall argues that *Richmond v. Richmond*, 779 P.2d 1211, 1217 (Alaska 1989), *overruled on other grounds by Hansen v. Hansen*, 119 P.3d 1005, 1010 & n.16 (Alaska 2005), and *Jones v. Jones*, 666 P.2d 1031, 1035 (Alaska 1983), require the superior court to award attorney's fees to compensate Erwin only for any increase in fees caused by Mendenhall's conduct. But those cases concern attorney's fees in the initial divorce action which is generally exempt from Rule 82, and not the post-divorce enforcement action at issue here. *Johnson*, 239 P.3d at 399-400. Attorney's fees in this case were appropriately calculated under Rule 82, under which fees can be enhanced for

(continued...)

## V. CONCLUSION

The superior court's decision is AFFIRMED.

---

(...continued)
vexatious or bad faith conduct without evidence of causation. *See id.*; Alaska R. Civ. P. 82(b)(3)(G).