## Case No. 11,593.
### RAYMOND v. DANBURY & N. R. CO.
[14 Blatchf. 133.] [1]

Circuit Court, D. Connecticut. Feb. 15, 1877.

JURY—ASSESSING DAMAGES—PRACTICE AT LAW.

1. In an action of tort, in a court of the United States, where the defendant suffers a default, the plaintiff has no constitutional right to have the damages assessed by a jury.

2. Such assessment is a matter of practice, and may be made according to the practice of

1 [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

the courts of the state in which the federal court is held. In Connecticut, such assessment may be made by the court.

[This was an action by Ebenezer W. Raymond against the Danbury & Norwalk Railroad Company. Heard after default by defendant on the question of assessment of damages.]

William R. Smith, for plaintiff.
Calvin G. Child, for defendants.

SHIPMAN, District Judge. This is an action of tort, to recover damages for an injury to the plaintiff, arising from the negligence of the defendants. The defendants have suffered a default, and have thereby admitted a cause of action, as alleged, but not the alleged extent of the injury, and the question now before the court is as to the tribunal by which the quantum of damages is to be ascertained. The plaintiff insists that he has a constitutional right to have the questions of fact in regard to damages determined by a jury, while the defendants assert, that, in accordance with the practice of the state courts in Connecticut, the damages are to be assessed by the court.

The seventh amendment to the constitution of the United States provides, that, "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any court of the United States, than according to the rules of the common law." By the first clause of the amendment, the right of trial by jury, in common law actions, was guaranteed. The right, and the same right, of jury trial, which then existed, was to remain undisturbed. In some of the state constitutions, the same idea is expressed by the phrase, "shall remain inviolate." By the common law, at the date of the adoption of the constitution, the trial of all issues of fact must be by a jury. By issues of fact are meant questions of fact, as distinguished from questions of law, which the result of the pleadings in each case shows to be in dispute or controversy between the parties; and a jury trial in issues of fact was the right of the litigant. In harmony with the constitutional right afterwards guaranteed by the seventh amendment, congress provided, in the twelfth section of the act of September 24th, 1789 (1 Stat. 79, 80), that the trial of all issues of fact shall, in all suits, except those of equity and of admiralty and maritime jurisdiction, be by jury. But the assessment of damages, upon a default, either in actions of tort or of contract, stood upon a different footing from the trial of issues of fact. In the early history of the common law, the subject of the ascertainment of damages was in some confusion. The courts frequently fixed the amount of damages on a judgment by default and on demurrer (Rolle, Abr. tit. "Damages"); and, "though the justices use to award inquest of damages, when

they give judgment by default, yet they themselves may tax the damages, if they will" (Sedg. Dam. 598. 2d Ed.; vol. 3, Vin. Abr. p. 84, "Damages," I). Courts had also the right of revising the amount of damages which had been assessed upon a writ of inquiry. In 1765, the date of the publication of the first volume of Blackstone's Commentaries, the practice had become settled, that, upon a default, damages should be assessed upon a writ of inquiry, by a sheriff's jury; but a practice was "established in the courts of king's bench and common pleas, in actions where judgment is recovered by default upon a bill of exchange or a promissory note, to refer it to the master or prothonotary, to ascertain what is due for principal, interest, and costs, whose report supersedes the necessity of a writ of inquiry." 3 Bl. Comm. (by Sharswood) 398, note 11. In 1848, before the enactment of the statute of 15 & 16 Vict. c. 76, § 94, in regard to the ascertainment of damages by a master, in actions of contract, it is said, in Whitaker v. Harrold, 12 Jur. 395, an action of covenant, that the court of queen's bench had the power to assess damages, on demurrer or default, without the intervention of a jury. The assessment of damages by a jury, in actions of tort, was, however, a matter of practice, and not of right. Chief Justice Wilmot held, in 1770, as had been previously declared in 1764, that a writ of inquiry, in an action of tort, is an inquest of office, to inform the conscience of the court, which could itself have assessed the damages, without any inquest. Beardmore v. Carrington, 2 Wils. 244; Bruce v. Rawlins, 3 Wils. 61; 2 Finlason's Reeves' History of English Law, 610.

In the 20th section of the act of September 24, 1789 (1 Stat. 87), congress provided, that, in all causes to recover the forfeiture annexed to any article of agreement, covenant, bond, or other specialty, where the forfeiture, breach or non-performance shall appear by the default or confession of the defendant, or upon demurrer, the court shall render judgment therein for the plaintiff, to recover so much as is due according to equity; and that, when the sum for which judgment should be rendered is uncertain, the same shall, if either of the parties request it, be assessed by a jury. This section is reproduced in section 961 of the Revised Statutes. No provision was made for assessing damages in actions of tort. By the 17th section of the same act, the United States courts were empowered to establish all necessary rules for the orderly conducting of business in said courts, provided such rules were not repugnant to the laws of the United States. It is said by Judge Washington, in Golden v. Prince [Case No. 5,509], in speaking generally of the rules of practice, that the different circuit courts, at their first sessions, adopted the state practice as it then existed. In 1797, the supreme court decided, in Brown v. Van Braam, 3 Dall. [3 U. S.] 344, upon a writ of error from

the circuit court for the district of Rhode Island, that the assessment of damages after a default, in a suit upon a foreign bill of exchange, by the court, instead of a jury, under the practice and laws of that state, was correct, Judge Chase observing, that he concurred in the opinion of the court, upon common law principles.

The practice in this state, at the date of the adoption of the constitution, in regard to the assessment of damages, is easily ascertained. Judge Swift, in his System, published in 1796, says: "Our courts possess the same power to assess damages as a jury in England, upon a writ of inquiry issued to the sheriff for that purpose. There, in these cases, the court must issue a writ to the sheriff, commanding him, by twelve men, to inquire into the damages, and make return to the court, which process is called a writ of inquiry. The sheriff sits as judge, and there is a regular trial by twelve jurors, to assess the damages. This mode of proceeding must be productive of expense and delay; and the practice of this state, introduced by our courts, without the authority of a statute, of assessing the damages themselves, without the intervention of a jury, is one of the many instances in which we have improved upon the common law of England." 2 Swift, Syst. Law Conn. 268. This practice of the courts was afterwards sanctioned by statute (Revision 1821, p. 50, § 59), and has remained the law of the state ever since.

The practice of the United States courts, in the different circuits, has not been uniform. The more common method has been to assess damages by a jury, upon a writ of inquiry, but it is believed that the practice has conformed to the usages of the state in which the circuit court is held. 2 Abb. U. S. Prac. 50. In this district, neither the custom of calling in a marshal's jury to assess damages, nor the assessment by a petit jury, under the direction of the court, has prevailed.

The conclusion is, that the assessment of damages by a jury, upon a default, is matter of practice, and not of right; and that the assessment should be made in this case according to the uniform practice of the state courts. Let the damages be assessed by the court, or, if the parties agree, by the clerk, as committee, to find and report the facts and the amount of damages.