*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PETER HAINES, as the personal representative of the Probate Estate of Verna Haines (Deceased), | ) ) ) | Supreme Court No. S-16034 |
| | ) | Superior Court No. 3AN-11-12882 CI |
| Appellant, | ) ) | O P I N I O N |
| v. | ) ) | No. 7163 – March 24, 2017 |
| COMFORT KEEPERS, INC. and LUWANA WITZLEBEN, | ) ) ) | |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Yale H. Metzger, Law Offices of Yale H. Metzger, Anchorage, for Appellant. John J. Tiemessen, Clapp Peterson Tiemessen Thorsness & Johnson, LLC, Fairbanks, for Appellee Comfort Keepers, Inc. No appearance by Appellee Luwana Witzleben.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.

## I.     INTRODUCTION

An elderly woman hired an in-home care company to assist her with day-to-day living. The company provided an in-home assistant who was later discovered to

have stolen the woman's jewelry and prescription medication. The woman sued both the company and the assistant for conversion and assault, among other causes of action, and accepted an offer of judgment from the company. The assistant did not appear in the superior court.

Eventually the woman applied for entry of default against the assistant "on the condition that once default is entered[,] . . . damages are to be determined by a jury." The superior court granted a default but ruled that trial on damages would take place without a jury. After a bench trial, the court found that the assistant's actions had caused the woman no additional suffering and therefore awarded her no damages.

The woman appeals. We affirm the superior court's decisions on the measure of damages for conversion and discovery sanctions. But we conclude it was an abuse of discretion to grant the woman's application for default while denying the condition on which it was based — retaining her right to a jury trial. We also conclude that it was error to award no damages or attorney's fees after entry of default when the allegations of the complaint and the evidence at trial put causation and harm at issue, and that the allegations of the complaint could have supported an award of punitive damages. We therefore vacate the superior court's judgment and remand for further proceedings.

II.    FACTS AND PROCEEDINGS

Because of her advanced age and declining health, Verna Haines hired Comfort Keepers, Inc. to provide in-home care. Comfort Keepers assigned its employee Luwana Witzleben to work as Verna's personal assistant. Witzleben stole Verna's jewelry and prescription pain medication and, to conceal her theft of the medication, substituted pills that looked similar but had not been prescribed.

In December 2011 Verna filed a complaint against Comfort Keepers and Witzleben in superior court, alleging claims for negligent hiring, conversion, assault and

battery, breach of contract, and unjust enrichment. Along with her complaint Verna filed a timely demand for a jury trial.

Verna served discovery requests on Witzleben, and after receiving no response filed a motion to compel. She also asked the court to hold that Witzleben's failure to timely respond to the discovery requests waived any objection to them. The court granted Verna's motion to compel but declined to impose sanctions, citing Witzleben's self-represented status and some doubt as to whether she "fully understood her [discovery] obligation."

Another year passed without any response from Witzleben. Verna died in the meantime, and Peter Haines (Haines), the personal representative of her estate, was substituted as plaintiff. In April 2014 the superior court invited Haines to apply for entry of default against Witzleben under Alaska Civil Rule 55(c). In another order issued the same day, the court granted Comfort Keepers' motion to strike Haines's unjust enrichment claim, which was based on the theory that the damages for conversion of Verna's medication should be calculated by reference to its "street value." Rejecting this theory, the court stated that "[t]here is no basis for permitting a party to recover the value realized by a defendant through illegal activity" and held that any damages for the medication's conversion were limited to "the fair market value or value to [Verna] at the time it was taken."

In August 2014 Haines accepted an offer of judgment from Comfort Keepers, notified the superior court, and filed a proposed final judgment against Comfort Keepers. The court responded that "pursuant to Alaska Civil Rule 54(b), a final judgment will not be entered against one defendant until all the claims in the case are resolved as to all the defendants," and it asked Haines for "an update . . . regarding whether he intends to pursue default judgment against Ms. Witzleben." Haines

accordingly applied for entry of default against Witzleben "on the condition that once default is entered . . . damages are to be determined by a jury." The superior court signed the entry of default against Witzleben in November 2014, set a default judgment hearing for a few weeks later, and expressly stated that "[a] jury trial will *not* occur." (Emphasis in original.)

The default judgment hearing took place in December 2014, and the only issue was damages. The court heard testimony from several witnesses, including Verna's children, on the extent of her non-economic harm, but Haines did not attempt to prove economic damages. The court's subsequent written decision awarded Haines no damages at all, finding that Witzleben's tortious conduct, though "callous," caused Verna no pain or suffering beyond what she was already undergoing. The court later entered final judgment against Witzleben as well as a satisfaction of judgment against Comfort Keepers — though no final judgment against Comfort Keepers had been entered on the accepted Alaska Civil Rule 68 offer of judgment.

Haines appeals. He argues that the superior court erred when it (1) struck Haines's claim for unjust enrichment; (2) denied oral argument on the motion to strike; (3) "improperly denied [his] request for an order [stating] that any objections to discovery requests . . . were waived"; (4) denied Haines a jury trial on damages; (5) entered its damages award without considering the legal effect of the default against Witzleben; (6) failed to award punitive damages; (7) failed to award Haines attorney's fees; and (8) entered a satisfaction of judgment against Comfort Keepers "without having ever entered final judgment."

Comfort Keepers does not address most of the issues raised on Haines's appeal because they involve only Witzleben. It does address the court's grant of its motion to strike Haines's unjust enrichment claim, Haines's request for oral argument

on the motion, and the satisfaction of judgment. Witzleben does not appear in this appeal.

## III. STANDARDS OF REVIEW

"We decide constitutional issues of law" such as a party's right to a jury trial "by applying our independent judgment."[1] In doing so we will adopt "a reasonable and practical interpretation in accordance with common sense based upon 'the plain meaning and purpose of the provision and the intent of the framers.' "[2] "A trial court's determination of damages is a finding of fact which we affirm unless it is clearly erroneous. But we apply our independent judgment in deciding whether the trial court's award of damages is based on an erroneous application of law."[3]

We review denials of oral argument on non-dispositive motions, sanctions for discovery violations, and awards of attorney's fees for abuse of discretion.[4] "The trial court has broad discretion" in awarding attorney's fees,[5] and we "will not find an abuse of that discretion absent a showing that the award was arbitrary, capricious, manifestly

---

[1]    *See Simpson v. Murkowski*, 129 P.3d 435, 440 (Alaska 2006) (citing *Alaska Legislative Council v. Knowles*, 21 P.3d 367, 370 (Alaska 2001)).

[2]    *Id.* (quoting *Alaska Legislative Council*, 21 P.3d at 370).

[3]    *Beaux v. Jacob*, 30 P.3d 90, 97 (Alaska 2001) (citing *Curt's Trucking Co. v. City of Anchorage*, 578 P.2d 975, 977 (Alaska 1978)).

[4]    *See* Alaska R. Civ. P. 77(e)(2); *Nautilus Marine Enters., Inc. v. Exxon Mobil Corp.*, 332 P.3d 554, 557 (Alaska 2014) (first citing *Wooten v. Hinton*, 202 P.3d 1148, 1151 (Alaska 2009); then citing *Khalsa v. Chose*, 261 P.3d 367, 372 (Alaska 2011)).

[5]    *Nautilus Marine*, 332 P.3d at 560 (citing *Valdez Fisheries Dev. Ass'n v. Froines*, 217 P.3d 830, 833 (Alaska 2009)).

unreasonable, or stemmed from an improper motive."[6]  We also review for abuse of discretion the superior court's decision to grant or deny an application for default.[7]

## IV.    DISCUSSION

In the discussion that follows we conclude that the superior court did not err in striking Haines's claim for unjust enrichment, nor did it abuse its discretion in declining to award him sanctions and attorney's fees during the course of discovery.  But we conclude it was an abuse of discretion to enter a default while denying Haines a jury trial on damages when Haines had expressly conditioned his application for default on retaining the jury trial right.  We also conclude that the superior court erred in its findings on damages and attorney's fees in the proceedings that followed.  Although these last issues might not arise again on remand given the procedural options, they are significant, and we address them now for the sake of efficiency.

### A.    The Superior Court Did Not Err In Striking Haines's Claim For Unjust Enrichment.

On Comfort Keepers' pretrial motion the superior court struck Haines's claim for "unjust enrichment," which sought to measure damages by the "street value" of the medication Witzleben converted rather than fair market value or some other traditional measure of Verna's actual loss.  The court concluded that "[t]here is no basis" in Alaska law "for permitting a party to recover the value realized by a defendant through illegal activity."  This was not error.

---

**6**        *United Servs. Auto. Ass'n v. Pruitt ex rel. Pruitt*, 38 P.3d 528, 531 (Alaska 2001) (quoting *Power Constructors, Inc. v. Taylor & Hintze*, 960 P.2d 20, 44 (Alaska 1998)).

**7**        *See Peter Pan Seafoods, Inc. v. Stepanoff*, 650 P.2d 375, 378 (Alaska 1982) ("When an application for default is made to the court under Alaska Civil Rule 55(c), the trial court is required to exercise its discretion in determining whether the judgment should be entered.").

"Unjust enrichment" is not a cause of action but a prerequisite to recovery under the doctrine of restitution.[8] Restitution, an equitable remedy based on the concept of quasi-contract, is available only when there is no adequate remedy at law.[9] For conversion claims, such remedies generally exist. We have noted that courts use "three different standards" to "measur[e] damages for loss of personal property": (1) fair market value; (2) value to the owner "based upon actual monetary loss resulting from the owner being deprived of the property"; and (3) "where the property has its primary value in sentiment," "value to the owner including sentimental and emotional value."[10] Under these standards Haines could have sought damages based on the converted medication's fair market value, what Verna actually spent for it, or what she would have had to spend to replace it.

But Haines did not attempt to prove economic damages at trial under these or any other measures. Instead he focused entirely on noneconomic damages, and the superior court, finding no proof of noneconomic harm, therefore awarded no damages at all. But the lack of a damage award does not mean that Haines lacked an adequate

---

[8]     *Alaska Sales & Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987).

[9]     *See Knaebel v. Heiner*, 663 P.2d 551, 553 (Alaska 1983) ("One who seeks the interposition of equity must generally show that he either has no remedy at law or that no legal remedy is adequate." (citing *Coffman v. Breeze Corps.*, 323 U.S. 316, 322 (1945))). We have defined "quasi-contracts" as "judicially created obligations to do justice." *Millet*, 735 P.2d at 746 (citing 1 A. CORBIN, CORBIN ON CONTRACTS §§ 18-19, at 39-50 (1963); 1 S. WILLISTON, WILLISTON ON CONTRACTS §§ 3-3A, at 8-13 (3d ed. 1957)).

[10]     *Landers v. Municipality of Anchorage*, 915 P.2d 614, 618-19 (Alaska 1996) (citations omitted); *see also Dressel v. Weeks*, 779 P.2d 324, 328 (Alaska 1989) ("Damages in an action of conversion generally are measured by the value of the item at the time it was converted plus interest." (quoting *Rollins v. Leibold*, 512 P.2d 937, 944 (Alaska 1973))).

remedy at law. He could have presented evidence of economic damages but chose not to once the court had ruled against him on his favored measure of damages. And as for noneconomic harm, he was awarded no damages because the court found that the evidence was insufficient, not because damages were not legally available if proven. Because Haines had an adequate remedy at law, restitution was not available as an equitable alternative.

Haines also argues that Comfort Keepers' motion to strike the damages remedy was, in effect if not in form, an Alaska Civil Rule 12(b)(6) motion to dismiss on which the court was obliged to accept as true all well-pleaded allegations of his complaint, including his allegation that Witzleben was unjustly enriched by her wrongful conduct.[11] But the motion was directed at a measure of damages, not a cause of action; it was not a Rule 12(b)(6) motion to dismiss.[12] And even on a motion to dismiss, a court is not obliged to accept as true "unwarranted factual inferences and conclusions of law."[13] Thus, even if the court was bound to accept the factual allegation that Witzleben unjustly enriched herself by converting Verna's jewelry and medication, it did not have to accept Haines's preferred legal conclusion: that Haines was therefore entitled to restitution as a remedy.

---

[11] *See Dworkin v. First Nat'l Bank of Fairbanks*, 444 P.2d 777, 779 (Alaska 1968).

[12] Because we reject Haines's argument that the motion to strike his unjust enrichment claim was a Rule 12(b)(6) motion to dismiss, we also reject his argument that the court was obliged to schedule oral argument on the motion under Rule 77(e). Rule 77(e)(2) explains that except for "dispositive motions," "oral argument shall be held only in the discretion of the judge." Haines alleges no specific prejudice caused by the lack of oral argument nor does he identify any other basis on which we could conclude that the denial of oral argument was an abuse of discretion.

[13] *Dworkin*, 444 P.2d at 779.

Finally, Haines argues that public policy supports his theory that damages in this context should be measured by the amount of the defendant's gain rather than the amount of the plaintiff's loss — the usual measure in tort cases.[14] He argues that limiting the plaintiff's recovery to what the plaintiff lost rewards the thief who steals something for which the victim paid very little and sells it on the black market for a great deal more. But "[t]he primary purpose of tort law is to provide just compensation to the tort victim," and "[c]ompensatory damage awards are designed to achieve this purpose."[15] Punishing the wrongdoer, when appropriate in the civil law, is accomplished through punitive or other exemplary damages.[16] And the consequences for wrongdoing may extend beyond civil damages. Criminal statutes require thieves to pay fines and restitution.[17] In this case, Witzleben did not escape the public consequences of her crimes; she was convicted of misconduct involving a controlled substance and theft. We are not convinced that either public policy or the facts of this case require the dramatic change in the measure

---

[14] *See* 1 D. DOBBS, LAW OF REMEDIES § 1.1, at 4 (2d ed. 1993) ("[T]he aim of damages is compensation for the plaintiff's loss, or at least some substitute for compensation. In particular, damages [are] not measured by defendant's gain, which is the province of restitutionary remedies.").

[15] *Anderson v. State ex rel. Cent. Bering Sea Fishermen's Ass'n*, 78 P.3d 710, 717 (Alaska 2003) (citing *State Farm Mut. Auto. Ins. Co. v. Weiford*, 831 P.2d 1254, 1266 (Alaska 1992)).

[16] *Id.* ("Punitive damages have different objectives [from compensatory damages]. They are intended 'to punish the wrongdoer and to deter the wrongdoer and others like him from repeating the offensive act.' As such, they are like fines imposed in criminal and civil cases." (citing *Weiford*, 831 P.2d at 1264)).

[17] *See, e.g.*, AS 11.46.120-.150 (defining the four degrees of theft); AS 12.55.045 (authorizing trial courts to "order a defendant convicted of an offense to make restitution . . . to the victim or other person[s] injured by the offense").

of compensatory damages that Haines advocates. The superior court did not err in striking Haines's unjust enrichment claim.

## B. The Superior Court Did Not Abuse Its Discretion In Its Discovery Rulings.

Haines contends that the superior court abused its discretion in two discovery rulings, but we find no abuse of discretion in either. In the first, the court declined to hold that Witzleben waived any objections to written discovery by her failure to timely respond. Haines argues that this was error because Witzleben never showed the "good cause" required to excuse her nonresponse.[18]

But the superior court enjoys broad discretion in deciding whether to impose discovery-related sanctions.[19] Here, in determining that the requested sanction was "inappropriate at this time," the court expressly noted the governing standard that "[a]ny grounds not stated in a timely objection [to an interrogatory] are waived unless a party's failure to object is excused by the court for good cause shown."[20] The court concluded that Witzleben, who was not represented by an attorney, may not have "fully understood her obligation" and accordingly allowed her another 20 days to respond. A superior court's ruling is not an abuse of discretion unless it is "arbitrary, capricious,

---

[18] *See* Alaska R. Civ. P. 33(b)(4) (providing that any objection to an interrogatory "not [timely] stated . . . is waived unless the party's failure to object is excused by the court for good cause shown."); *see also* Alaska R. Civ. P. 37(a)(2)(A) (providing for "appropriate sanctions" if a party does not respond to discovery requests).

[19] *Khalsa v. Chose*, 261 P.3d 367, 372 (Alaska 2011) (noting that this discretion becomes more limited if the superior court's sanction imposes liability; establishes the outcome of or precludes evidence on a central issue; or ends the litigation entirely).

[20] Alaska R. Civ. P. 33(b)(4).

manifestly unreasonable, or . . . stems from an improper motive."[21]  The court clearly considered the good-cause standard when it decided to give Witzleben more time to respond before considering sanctions; this was not an abuse of discretion.

Second, Haines asserts that he was wrongly denied an award of attorney's fees after the court granted his motion to compel discovery from Witzleben.  Alaska Civil Rule 37(a)(4)(A) directs the court to award "reasonable expenses . . . .  including attorney's fees" to the successful proponent of a such a motion.  But the rule also allows a court to decline to award fees if it "finds . . . the opposing party's nondisclosure . . . substantially justified, or [if] other circumstances make an award of expenses unjust."[22]  The court noted these aspects of the rule in its order and determined not to award attorney's fees because "Witzleben [was] a self-represented litigant" and "it [was] unclear whether she ever received" Haines's discovery requests or understood the procedures for response.  It was not an abuse of discretion for the court to take these matters into account and decide that under the circumstances it would be unjust to award fees.

C.     **It Was An Abuse Of Discretion To Enter Default But Deny Haines A Jury Trial On Damages When His Request For Default Was Conditioned On Retaining His Right To A Jury Trial.**

The next issue we address involves Haines's right to a jury trial on damages following entry of default against Witzleben.  When Haines applied for entry of default, his application was made expressly "on the condition that once default is entered . . . damages are to be determined by a jury."  The superior court granted the application for

---

[21]     *Roderer v. Dash*, 233 P.3d 1101, 1107 (Alaska 2010) (alteration in original) (quoting *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1026 (Alaska 2009)).

[22]     Alaska R. Civ. P. 37(a)(4)(A).

default but ruled that a damages hearing would occur without a jury. Haines argues that article I, section 16 of the Alaska Constitution granted him a right to a jury trial which he did not waive by seeking the entry of default. We disagree that he had a right to a jury trial following default. But because his application for default was expressly conditioned on keeping a jury trial, we agree it was an abuse of discretion to grant the default while rejecting the condition.

The Alaska Constitution guarantees the right to trial by jury "[i]n civil cases where the amount in controversy exceeds two hundred fifty dollars . . . to the same extent as it existed at common law."[23] "That this right is to be jealously guarded by the courts of this state is made clear by Alaska Civil Rule 38(a), which charges the courts with insuring that the right to trial by jury in civil cases 'shall be preserved to the parties inviolate.' "[24] Rule 38(b) provides that "[a]ny party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor." And under Alaska Civil Rule 39(a),

> [w]hen a trial by jury has been demanded and not waived as provided in Rule 38, the trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record . . . consent to trial by the court siting without a jury or (2) the court upon motion by a party or upon its own motion finds that a right of trial by jury of some or all of those issues does not exist under the state constitution or statutes of the state.

---

[23] Alaska Const. art. I, § 16. We noted in *Glover v. State, Dep't of Transp., Alaska Marine Highway Sys.* that "the constitutional convention considered proposals extending the right to a jury trial to all suits brought in the superior court and rejected those proposals." 175 P.3d 1240, 1256 (Alaska 2008) (citing 2 Proceedings of the Constitutional Convention (PACC) 1351-52, 1355 (Jan. 6, 1956)).

[24] *Frank v. Golden Valley Elec. Ass'n*, 748 P.2d 752, 754 (Alaska 1988).

Accordingly, because the parties in this case did not consent to proceed without a jury, the first issue we address is whether Haines had a right to a jury trial on damages following default "under the state constitution or statutes of the state,"[25] with the constitutional inquiry focusing on whether such a right "existed at common law."[26]

### 1. A jury trial on damages following default is not required by Alaska statutes or the Alaska Constitution.

We first observe that there are no "statutes of the state" that grant a right to a jury trial in these circumstances. The legislature, by statute, has provided for juries in various types of special proceedings,[27] but it has not found it necessary to supplement by statute the constitution's reservation of the right to a jury trial for the general run of civil cases like the one at issue here.[28]

In defining the reach of the constitutional right, we must determine whether the right to a jury following default "existed at common law." We have noted that "[a]t common law, the existence of a right to trial by jury depended upon whether the claim

---

[25] Alaska R. Civ. P. 39(a).

[26] Alaska Const. art. I, § 16.

[27] *See, e.g.*, AS 09.50.030 (granting a right to jury trial for persons charged with certain types of contempt of court); AS 09.55.320 (granting a right to jury trial in eminent domain proceedings "on the question of the amount of damages and the value of the property"); AS 13.06.085(a) (granting a right to jury trial in certain probate cases "in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury").

[28] There is federal authority for the proposition that the only statutes relevant to whether the jury trial right survives default are those few that "specifically provide[] for jury trial after default." *See Benz v. Skiba, Skiba & Glomski*, 164 F.R.D. 115, 116 (D. Me. 1995). Having identified no state statutes relevant to the preservation of the jury-trial right, we find it unnecessary to address this issue further.

asserted was legal or equitable in nature."[29]  But we have also recognized that the common law itself made exceptions to this general rule.[30]

Courts have disagreed on whether a jury demand survives the entry of default. One federal court surveyed the relevant precedent and concluded that "[c]aselaw dating back to the eighteenth century . . . makes clear that the constitutional right to jury trial does not survive the entry of default."[31]  A close reading of the early cases, however, shows that the common law on this issue developed differently in different states, and federal courts opted early to follow state practice, whatever that might be.  Thus in *Raymond v. Danbury & N.R. Co.*, the federal court for the District of Connecticut made perhaps the most extensive review of early authorities, both English and American.[32]  It noted that "[i]n the early history of the common law, the subject of the ascertainment of damages [following entry of default] was in some confusion"; that different courts had applied different rules since the time of Blackstone's original Commentaries in 1765; but

---

[29]  *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 423-24 (Alaska 1982) (citing *Ross v. Bernhard*, 396 U.S. 531, 533 (1970)).

[30]  *See, e.g.*, *Glover v. State, Dep't of Transp., Alaska Marine Highway Sys.*, 175 P.3d 1240, 1256 (Alaska 2008) (holding that a statute requiring seamen's claims against the state to proceed exclusively under the workers' compensation statutes did not violate the right to a jury trial because "at common law there was no right to sue the sovereign and therefore no right to a jury trial in such a suit"); *Christensen v. NCH Corp.*, 956 P.2d 468, 477 (Alaska 1998) (holding that a proper grant of summary judgment could not violate the constitutional right to a jury trial because "[a]t common law — as under current Alaska law — a court had the power to remove factual issues from the jury's consideration 'where the court decide[d] there [was] insufficient evidence to raise a question of fact to be presented to the jury' " (alteration in original) (citing *Taylor v. Interior Enters., Inc.*, 470 P.2d 405, 407 (Alaska 1970))).

[31]  *Benz*, 164 F.R.D. at 116 (citing cases).

[32]  20 F. Cas. 332, 333-34 (C.C.D. Conn. 1877).

that Connecticut's practice had "improved upon the common law of England" by clearly allowing a court to assess damages itself after default without the assistance of a sheriff's jury.[33] Observing that "[t]he practice of the United States courts, in the different circuits, has not been uniform," the court concluded that "[t]he more common method has been to assess damages by a jury, upon a writ of inquiry."[34] But because federal "practice has conformed to the usages of the state in which the circuit court was held," and because in Connecticut "the uniform practice of the state courts" did not require a jury, the court ordered that "the damages be assessed by the court, or, if the parties, agree, by the clerk."[35]

A later opinion by the Oregon Supreme Court concluded that whether to request a jury's input on damages in cases of default "to inform the mind or conscience of the court" had always been a matter of judicial discretion rather than of right, in both English and American law.[36] The court therefore held that a state statute directing the court to assess damages following default "without the intervention of a jury" did not violate the state constitutional command that the right to a jury as it existed at common law remain inviolate.[37] But a few other courts decided more or less contemporaneously that their states' common law *did* require jury trials following default.[38]

---

[33]     *Id.* at 333-34 (quoting 2 ZEPHANIAN SWIFT, A SYSTEM OF THE LAWS OF THE STATE OF CONNECTICUT 268 (1795)).

[34]     *Id.* at 334.

[35]     *Id.*

[36]     *Dean v. Willamette Bridge Ry. Co.*, 29 P. 440, 441-43 (Or. 1892).

[37]     *Id.* at 442-43.

[38]     *See Cent. & M.R. Co. v. Morris*, 3 S.W. 457, 462 (Tex. 1887) (concluding
(continued...)

The historical common law rule in this context is thus subject to different interpretations. But the common law as it existed at the time of the adoption of the Alaska Constitution is clearer.[39] By that time, federal courts had largely coalesced behind a rule that although "the court may order a jury trial as to damages in a default situation if it seems to be the best means of assessing damages[,] . . . neither side has a right to a jury trial on damages."[40] This continues to be the generally accepted

---

[38](...continued)
"that, under the course of procedure at common law, when a judgment was rendered by default, and the cause of action was not liquidated, a jury was always called to assess the damages," and that this right was necessarily preserved by the state constitution and could not "be infringed by any act of the legislature"); *Hickman v. Baltimore & Ohio R.R Co.,* 4 S.E. 654, 659 (W. Va. 1887), *overruled in part on other grounds by Richmond v. Henderson*, 37 S.E. 653, 660 (W. Va. 1900) (concluding that "according to the common law, as recognized and settled in this state, there can be no final judgment by default" in cases involving over $20 and not a sum certain and that "the right of either party, if he demands it, to have such writ executed by a jury, is guarantied [sic] by our constitution").

[39]     *See, e.g.*, *People ex rel. Daley v. Joyce*, 533 N.E.2d 873, 876 (Ill. 1988) (explaining that "it is the common law right to jury trial *as enjoyed at the time of the adoption of the 1970 constitution* to which [the constitutional phrase] 'heretofore enjoyed' refers" (emphasis in original)); *State v. $17,515.00 in Cash Money*, 670 N.W.2d 826, 827 (N.D. 2003) (holding that the state constitutional guarantee of a jury trial "merely preserves the right as it existed at the time of the adoption of our constitution"); *LeBlanc v. Snelgrove*, 133 A.3d 361, 372 (Vt. 2015) (explaining that the constitutional right of trial by jury "applies to 'the right to trial by jury as it was known at common law at the time of the adoption of the [Vermont] Constitution' " (quoting Reporter's Notes to Vt. R. Civ. P. 38(a)); *Kroner v. Oneida Seven Generations Corp.*, 819 N.W.2d 264, 284 (Wis. 2012) (holding that civil litigants have a constitutional right to a jury trial "if that right existed at common law at the time of the adoption of the constitution"); *see also* AS 01.10.010 ("So much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States or with any law passed by the legislature of the State of Alaska is the rule of decision in this state.").

[40]     10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE (continued...)

interpretation of the constitutional right, and most courts therefore reject demands that a jury trial on damages follow entry of default as a matter of right.[41] We have found no

**40**(...continued)

§ 2688, at 82 (4th ed. 2016); *see Brown v. Van Braam*, 3 U.S. 344, 355 (1797) (concluding that "the English authorities countenance the Rhode Island law and practice" with regard to the roles of judge and jury in determining damages, including that "[w]here judgment is by default, the court may give the damages, without putting the party to the trouble of a writ of enquiry [to a jury]"); *Bass v. Hoagland*, 172 F.2d 205, 209 (5th Cir. 1949) ("There is of course no right to a jury trial when there is no issue of fact to be tried, and a judgment by default proceeds on that basis."); *Midland Contracting Co. v. Toledo Foundry & Mach. Co.*, 154 F. 797, 799-800 (7th Cir. 1907) (holding that an Illinois statute authorizing "the assessment of damages by the court, without a jury" following default does not infringe the constitutional right of trial by jury); *Gill v. Stolow*, 18 F.R.D. 508, 510 (S.D.N.Y. 1955) (holding that defendant had "no right to have the matter [of damages] referred to a jury after default" (citing 6 J. MOORE'S FEDERAL PRACTICE 172 (2d ed. 1951))), *rev'd on other grounds*, 240 F.2d 669 (2d Cir. 1957); *cf. Barber v. Turberville*, 218 F.2d 34, 37 n.1 (D.C. Cir. 1954) (deciding that "in a [default] case such as this, it is the better practice, if not actually compelled, that the issue as to damages be submitted to the jury," and implying that because the federal civil rules "have the effect of statutes," Civil Rule 38 may preserve the jury right following default).

**41**        *See Graham v. Malone Freight Lines, Inc.*, 314 F.3d 7, 16 (1st Cir. 1999) ("Neither the Seventh Amendment nor the Federal Rules of Civil Procedure require a jury trial to assess damages after entry of default in these circumstances."); *Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) (holding that neither plaintiff nor defendant has a constitutional right to a jury trial following default); *Mwani v. Bin Laden*, 244 F.R.D. 20, 23 (D.D.C. 2007) (finding no constitutional or statutory right to a jury trial following default but leaving open the question whether, as a discretionary matter, a jury trial would be the most appropriate method for assessing damages); *CountrymAn Nevada, LLC v. Suarez*, No. 6:15-cv-0436-SI, 2016 WL 5329597, at *4 (D. Or. Sept. 22, 2016) ("There is . . . substantial case law holding that there is no right to a jury trial for damages after an entry of default . . . ." (collecting cases)). *But cf. Zero Down Supply Chain Sols., Inc. v. Global Transp. Sols., Inc.*, 282 F.R.D. 604, 606-07 (D. Utah 2012) (citing federal consensus that defendants do not have a constitutional right to a jury trial folloing entry of default but relying on "the plain language of Rule 38(d)" to hold that

(continued...)

indication that the common law as understood by the framers of the Alaska Constitution was any different. In the absence of such evidence we are compelled to conclude that the right to a jury trial "as it existed at common law"[42] at the time of our constitution's adoption did not include a right to have a jury determine damages following entry of default.

> **2.      Haines did not waive his right to a jury trial by conditionally applying for entry of default.**

Although Haines did not have a right to a jury trial following default, he was not obliged to seek a default at all; he could have proceeded to trial without first seeking entry of default and thereby preserved his right to have a jury decide the case.[43] The next question we address, therefore, is whether Haines lost his right to a jury trial by applying for default even though his application was expressly conditioned on preserving that right.

---

[41](...continued)
a non-consenting party does not lose its right to a jury trial just because it is in default); *Kormes v. Weis, Voisin & Co.*, 61 F.R.D. 608, 609-10 (E.D. Pa. 1974) (citing federal consensus "that neither party has a constitutional right to a jury trial on the issue of damages after the entry of default" but concluding that "fairness and logic" mandate applying the waiver-only-by-consent requirement of Rule 38(d) after default and granting a jury trial on damages); *Wood v. Detroit Auto. Inter-Ins. Exch.*, 321 N.W.2d 653, 657-60 (Mich. 1982) (relying on the court's constitutional authority to establish rules of practice, along with the civil rules regarding the jury trial right, to conclude that the Michigan Constitution requires that a demand for jury trial survive entry of default).

[42]      Alaska Const. art. I, § 16.

[43]      Alaska R. Civ. P. 38. The rules also allow a party who has filed a timely jury demand to withdraw it unilaterally if the other party does not appear at trial; Rule 38(d) provides, in part, that "[a] party's consent to withdraw the jury trial demand may be implied by a failure to appear at trial."

Civil Rule 38(a) "preserve[s]" the "right of trial by jury . . . inviolate," and we have emphasized the importance of the right.[44] We have held, for example, that the right to a jury trial "will not be deemed waived . . . unless the waiver is explicit, or illustrated by actions 'so inconsistent with [an] intent to enforce the right in question' as to indicate that the right has been waived.' "[45] "The proper inquiry" is whether the party has "*prior notice* of the consequences of his action" which "justifies the court in finding a waiver."[46]

The record in this case contains no evidence of "prior notice" to Haines that by seeking an entry of default he would extinguish his right to a jury trial; in fact, the conditional nature of his application shows that he had no such understanding of the consequences. And as noted above, the rules do not require a party to accept a default proceeding he did not ask for. Civil Rule 55(a)(1) allows a trial court to enter a default against a party who "has failed to appear and answer or otherwise defend as provided by these rules"; it is captioned "Application for Default," and it strongly implies that the process is initiated not by the court but by "[t]he party seeking default," who must show facts "by affidavit or otherwise" that entitle the party to the relief sought. Civil Rule 55(c) addresses default judgments in cases involving damage claims that cannot easily be reduced to a sum certain, and it describes the initiation of the process more clearly by stating that "the party entitled to a default judgment shall apply to the court therefor." The rule goes on to state:

---

[44] *See Chilton-Wren v. Olds*, 1 P.3d 693, 696-97 (Alaska 2000).

[45] *Id.* (alteration in original) (quoting *Frank v. Golden Valley Elec. Ass'n*, 748 P.2d 752, 754-55 (Alaska 1988)).

[46] *Id.* (emphasis in original) (quoting *Frank*, 748 P.2d at 755).

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.[47]

The effect of the rule is that when a party seeks a default judgment the court has discretion as to how it will receive the evidence necessary to determine damages or to resolve other outstanding issues of fact. But the default judgment process does not preclude a party from telling the court, in effect: "I would like a default but not if it means that I give up my right to a jury trial on damages" — as Haines did here.

"There has always been a strong policy favoring jury trials in Alaska."[48] Before Rule 38(d) was amended to allow implied waiver of the jury trial right by a party's non-appearance at trial, we decided in several cases that even non-appearing defendants did not lose the right to a jury absent their express consent.[49] Although we follow the weight of authority in concluding that there is no constitutional right to a jury following default, the protectiveness we have historically accorded the jury trial right compels us to once again state that a party may not forfeit that right inadvertently or without prior notice. We therefore conclude that a party who applies for default, *while*

---

[47] Alaska R. Civ. P. 55(c)(1).

[48] *Loomis Elec. Prot., Inc. v. Schaefer*, 549 P.2d 1341, 1344 n.16 (Alaska 1976) (citing cases).

[49] *Hall v. Morozewych*, 686 P.2d 708, 712 (Alaska 1984) (holding that it was error to proceed without a jury where a defendant made a timely jury demand but did not appear at trial); *Hill v. Vetter*, 525 P.2d 529, 531 (Alaska 1974) (holding that it was error to proceed without a jury where the defendant failed to appear at trial and the plaintiff unilaterally revoked his jury demand). *But see Frank*, 748 P.2d at 755 ("Under [Rule 38(d)] as it reads today, however, the trial court may quite properly conclude that a party's failure to appear at trial constitutes waiver of the jury trial right.").

*expressly reserving the right to a jury trial on damages*, does not automatically forfeit the right.

If a party applies for default expressly conditioned in such a way, the court, in the exercise of its discretionary authority under Rule 55(c)(1), should first ascertain whether submitting damages to a jury would be "necessary and proper." If it would be, then the court should enter the requested default and allow the jury to determine damages. But if the court in its discretion decides that a jury is unnecessary or otherwise inappropriate — as it did here — then the court should deny the conditional application. The plaintiff at that point can make a knowing decision whether to renew its application unconditionally and proceed under Rule 55, with the benefits of an expedited and relatively certain default procedure, or try its entire case to a jury without first obtaining a default.

We hold that in this case it was an abuse of discretion to grant Haines's application for default without giving effect to the express condition upon which the application was made. The superior court was not bound to accept the condition; it could have denied the conditional application for default and required the entire case to proceed to trial. But Haines should not have been deprived of a jury trial when he was expressly attempting to preserve that right. We therefore vacate the entry of default and remand to the superior court for further proceedings.

**D.     We Address Haines's Issues Regarding Damages And Attorney's Fees For The Guidance Of The Superior Court On Remand.**

Haines will have the opportunity on remand to apply again for entry of default while preserving his right to a jury trial on damages. If he chooses not to do so, or if the court denies his conditional application, the case will proceed to trial on liability and damages and the discussion that follows will be largely irrelevant. But if Haines applies again for default and the court grants the conditional application, or if Haines

decides to expressly waive the jury trial right, the fact-finder, whether court or jury, will be required to evaluate not only the evidence but also the allegations of the complaint in order to determine what facts have been established by the pleadings.[50] Because we conclude that the effect of the default was not properly taken into account at the damages hearing, we provide the following guidance for the court on remand if Witzleben is again defaulted.

### 1. Haines was entitled to noneconomic damages.

The superior court did not award Haines any damages despite the entry of default against Witzleben. It awarded no economic damages because Haines presented no evidence of the value of the converted medication,[51] and it awarded no noneconomic damages because it found, based on witness testimony, that Witzleben's actions caused Verna no pain or anxiety beyond what she was suffering already. But we conclude that the court's decision on noneconomic damages failed to account for the effect of the entry of default.

Entry of default "establishes the well pleaded allegations of the complaint unless they are incapable of proof," "contrary to facts judicially noticed," or contrary to "uncontroverted evidence presented by the parties."[52] While we have "allow[ed] the trial

---

[50]     *See Valley Hosp. Ass'n v. Bauneis*, 141 P.3d 726, 728 (Alaska 2006) ("Generally speaking, '[i]f the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (quoting 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. 1998))); *see also Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004) (discussing the effect of a default judgment on subsequent findings of fact).

[51]     Haines does not challenge the superior court's ruling on economic damages.

[52]     *Syndoulos Lutheran Church v. A.R.C. Indus., Inc.*, 662 P.2d 109, 112
(continued...)

court 'to question a defendant's liability after a default has been entered against him,' "[53] we have also held that

> [p]laintiffs [in a default proceeding] do not have to prove questioned allegations by a preponderance of the evidence. Rather, they need only submit enough evidence to put the questioned allegation in controversy. If faced with "conflicting but legitimate evidence on both sides, the court is bound to enter judgment for the party in whose favor the default has been entered."[54]

Haines's complaint alleged that Witzleben "caused [Verna] physical injuries" and "harm[]." Testimony at trial supported these allegations. Verna's daughter Elizabeth testified that she believed her mother was experiencing pain and sleeping problems while in Witzleben's care because she was not receiving the medications she was prescribed. She also testified that her mother experienced "some" pain and anxiety even when not in Witzleben's care, and the court relied on this testimony to conclude that Witzleben's theft of the medication made no difference to Verna's symptoms. But Verna's other daughter and her son-in-law testified that there were times Verna suffered inexplicable pain while in Witzleben's care; that it was "a logical deduction" that this was because she was not receiving her proper pain medication; that she also experienced sleeplessness and anxiety because she was not getting her prescribed diazepam; that these problems continued for several months while she was helpless to do anything about it; and that these problems contributed to a decline in her quality of life. Haines had no

---

**52**(...continued)
(Alaska 1983) (citing *Thomson v. Wooster*, 114 U.S. 104, 108 (1885)).

**53**     *Valley Hosp. Ass'n*, 141 P.3d at 728 (quoting *Syndoulos Lutheran Church*, 662 P.2d at 112).

**54**     *Id.* at 728-29 (quoting *Syndoulos Lutheran Church*, 662 P.2d at 112).

burden to prove these facts by a particular quantum of evidence; he only needed to "put the questioned allegation in controversy."[55] We conclude that the testimony was sufficient for this purpose, and the court was required to accept as proven the allegations of causation and harm alleged in the complaint.

Once pain and suffering are proven, it is error not to award general damages.[56] Although "[s]uch damages are often difficult to estimate with any confidence, . . . it is clear that a carefully considered estimate leads to a more just result than denying all recovery to the injured victim."[57]

> ### 2. The complaint establishes a sufficient basis for an award of punitive damages.

Haines next argues that the superior erred in denying an award of punitive damages because the well pleaded allegations of his complaint established that Witzleben acted "with malice or bad motives" and "in reckless indifference to the interest of another person."[58] Haines is not necessarily entitled to an award of punitive damages; AS 09.17.020 provides that "[t]he fact finder *may* make an award of punitive damages" (emphasis added), and we have affirmed that "[w]hether or not [punitive damages] should be allowed is discretionary with the trier of fact."[59]

---

[55] *Id.*

[56] *Grant v. Stoyer*, 10 P.3d 594, 598 (Alaska 2000); *Martinez v. Bullock*, 535 P.2d 1200, 1204-05 (Alaska 1975); *Walker v. Alaska Road Comm'n*, 388 P.2d 406, 407 (Alaska 1964).

[57] *Morrison v. State*, 516 P.2d 402, 406 (Alaska 1973).

[58] AS 09.17.020(b).

[59] *Bridges v. Alaska Housing Auth.*, 375 P.2d 696, 702 (Alaska 1962).

We note, however, that it was error for the superior court to hold that it could award no punitive damages because it had awarded no compensatory damages. As explained above, Haines was entitled to an award of noneconomic damages after entry of default because the court was bound to accept as true the complaint's well pleaded allegations of harm.[60] In addition, punitive damages are available when a plaintiff proves "actual damages" or harm, even if the proof is not sufficient to warrant an award of compensatory damages.[61] Here, the well pleaded allegations of Haines's complaint establish both "actual harm" and a credible basis for an award of punitive damages.

Alaska Statute 09.17.020 allows an award of punitive damages "if the plaintiff proves by clear and convincing evidence that the defendant's conduct . . . was outrageous," malicious, "done with . . . bad motives," or "reckless[ly] indifferen[t] to the interest of another person." The decision to award punitive damages therefore "turn[s] on the wrongdoer's motive, state of mind, and degree of culpability."[62] Here, the superior court heard no testimony about Witzleben's motives. The complaint, however, alleged that she "converted [Verna's] jewelry," "converted [Verna's] prescription medication," and "administered medication to [Verna] that [Verna's] physician had discontinued." These allegations were not contested and should have been viewed as

---

[60]    *Valley Hosp. Ass'n*, 141 P.3d at 728 (quoting 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. 1998)). We note, however, that the court did not have to accept as true allegations regarding the *amount* of actual or exemplary damages. *Id.*

[61]    *Haskins v. Shelden*, 558 P.2d 487, 493 (Alaska 1976) (quoting CHARLES T. MCCORMICK, DAMAGES § 83, at 293 (1935)).

[62]    *Alyeska Pipeline Serv. Co. v. O'Kelley*, 645 P.2d 767, 774 (Alaska 1982) (citing K. REDDEN, PUNITIVE DAMAGES § 4.2 (1980)).

proven upon entry of default. They reasonably establish Witzleben's reckless indifference to Verna's health, safety, and property interests and hence are a sufficient basis for an award of punitive damages.

### 3. Haines was entitled to attorney's fees.

Haines sought an award of attorney's fees following the entry of final judgment. Although the court identified Haines as the prevailing party, it concluded that he was not entitled to attorney's fees because he received no damages. This conclusion is likely to change if Haines succeeds in recovering a judgment on remand.

The court also rejected Haines's reliance on AS 09.60.070 in support of his attorney's fees application. Under the statute, "a person who has been injured . . . may recover from the offender full reasonable attorney fees . . . if the injury . . . resulted from . . . a serious criminal offense."[63] The statute includes within the definition of "serious criminal offense" "assault in any degree."[64] The court concluded that Witzleben had not committed a "serious criminal offense" within the meaning of AS 09.60.070 and declined to award Haines attorney's fees under the statute.

Alaska Statute 11.41.230(a)(1) defines "assault in the fourth degree" as "recklessly caus[ing] physical injury to another person."[65] A related statute, AS 11.81.900(b)(47), defines "physical injury" as "physical pain or an impairment of physical condition." We conclude that the allegations of Haines's complaint fit these statutory definitions. The complaint alleged that Witzleben caused Verna "physical

---

[63]    AS 09.60.070(a).

[64]    AS 09.60.070(c)(4).

[65]    We previously held that "recklessly" describes a state of mind in which "[a] person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." *Johnson v. State*, 224 P.3d 105, 108 (Alaska 2010) (quoting AS 11.81.900(a)(3)).

injuries" and "harm[]." The testimony at trial generally supported these allegations. Witnesses testified that Verna appeared to be in pain due in part to the fact that "she wasn't being administered the pain medication she was supposed to be." And as we concluded above, Witzleben acted recklessly. By depriving Verna of her medication Witzleben disregarded a substantial and unjustifiable risk that Verna would suffer as a result.

Because Haines's well pleaded allegations satisfy the elements of assault in the fourth degree, we hold that it was error not to award attorney's fees to Haines under AS 09.60.070.[66]

## V. CONCLUSION

We VACATE the superior court's entry of default and default judgment against Witzleben and REMAND for further proceedings consistent with this opinion. Subject to our discussion of damages and attorney's fees, we otherwise AFFIRM the decisions of the superior court.

---

[66] Haines finally contends that the superior court erred when it entered a satisfaction of judgment for Comfort Keepers without first having entered a final judgment. Haines does not dispute that Comfort Keepers had in fact paid the amount it had offered to pay in its Rule 68 offer of judgment; he does not say how any alleged error prejudiced him or what further relief he could receive if we reversed on this issue. It is clearly moot. *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007) ("A claim is moot where a decision on the issue is no longer relevant to resolving the litigation, or where it has lost its character as a 'present, live controversy,' that is, where a party bringing the action would not be entitled to any relief even if he or she prevailed." (first quoting *Municipality of Anchorage v. Baxley*, 946 P.2d 894, 899 (Alaska App. 1997); then citing *Maynard v. State Farm Mut. Auto. Ins. Co.*, 902 P.2d 1328, 1329 n.2 (Alaska 1995))).